**STATE of Iowa, Appellee,**

v.

**Harold Wayne HOLT, Appellant.**

No. 52734.

Supreme Court of Iowa.

March 5, 1968.

Life, Davis & Life, by Patrick J. Life, Oskaloosa, and Rowe and Rowe, by John A. Rowe, Fairfield, for appellant.

Richard C. Turner, Atty. Gen., James L. Morrison, County Atty., Wm. A. Claerhout, Asst. Atty. Gen., for appellee.

SNELL, Justice.

Defendant was arrested, indicted, tried, convicted and sentenced for operating a motor vehicle while intoxicated. He has appealed.

Defendant filed a demurrer, application to take depositions of the State's witnesses, motion in limine, motion to suppress, motions for directed verdict, motion for new trial and motion in arrest of judgment. They were respectively overruled.

During the evening of December 14, 1966 defendant was driving his car on the public highway in Henry County. He was observed and followed by a highway patrolman. According to the patrolman defendant's car was weaving all over the road. The officer stopped defendant's car, asked the defendant how much he had had to drink and asked him to get out of his car. The officer testified that defendant was unstable and did poorly walking toe to heel.

Defendant was arrested, advised of his constitutional rights and taken to the Mt. Pleasant police station. Defendant was again advised of his constitutional rights. He was asked to and undertook certain coordination tests. Several witnesses testified that he did poorly. There was testimony that his eyes were bloodshot, his movements uncoordinated, his speech slurred and that he answered questions ambiguously. Several witnesses testified that in their opinion he was intoxicated.

The provisions of the Iowa Implied Consent Law were read to defendant in the police station. Defendant refused to take either the blood test or give a urine specimen and refused to sign the Implied Consent Waiver.

There was testimony by a doctor who had been called to take a blood specimen, if one was to be taken, and a city policeman that they overheard defendant tell the lady who was with him why he would not take a blood test. The doctor testified:

"A. At any rate, he stated he did not take a blood test because he drank enough every day so that he couldn't pass a blood test anyway.

"Q. Was this said in your presence? A. This was said in my presence. I was rather surprised because I wasn't questioning him; I was getting ready to leave.

"Q. Did you observe to whom he was addressing his remarks? A. Yes, it was to this lady who came down to either take him home or provide bail—he was giving her instructions, also, as to whom to contact for bail, and so forth."

The testimony relative to a blood test was brought out by the State's witness and by defendant's own testimony. Defendant testified in his own behalf. Relative to the blood test he said:

"The officer offered me a blood test. I hate needles and I have been stuck with them on many occasions. When I was in the hospital they gave me hypos. Blood was all they give me. They asked me to take a urine test. I couldn't urinate at that time. * * *

"I did refuse to take either the blood test or urine test at the station. I never was asked if I was intoxicated. Certainly I knew I was suspected of being intoxicated."

Defendant denied intoxication, denied making the statements claimed to have been overheard, and offered evidence that his uncoordinated walk was due to a previous leg injury. He offered evidence that the weaving motion of his car on the road was due to a detective steering mechanism.

I. The evidence of intoxication was in conflict.

It is not for us to pass on the weight and credit of the testimony nor to say which versions and stories should be believed. These matters were for the jury. There was ample evidence in behalf of the State to present a jury question and ample evidence to support the jury verdict. Further discussion of the evidence is unnecessary.

II. The real issues here relate to admission of testimony as to defendant's refusal to submit to a chemical test for intoxication and the court's instructions relative thereto. Defendant objected throughout the trial and now argues that any mention of his refusal to submit to a chemical test for intoxication violated his rights under the 5th Amendment to the United States Consitution providing that no person "shall be compelled in any criminal case to be a witness against himself." Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 holds that the Fourteenth Amendment makes the Fifth Amendment applicable to state court procedures.

Defendant's claims of error were made at every opportunity and are now argued in several divisions but they all relate to the same general proposition.

There is no claim in this case that defendant was not promptly and fully advised of his constitutional rights. He was not subjected to any interrogation. He testified, "I never was asked if I was intoxicated." He was asked if he would take certain tests. Some he did and some he refused. The provisions of the Iowa Implied Consent Law were called to his attention. There is no claim that he was uninformed or failed to understand.

For over 100 years it has been the law of Iowa that it is proper to show a defendant's conduct, demeanor, voluntary statements and attitude toward the crime, if there was one. See cases reviewed in State v. Benson, 230 Iowa 1168, 300 N.W. 275.

There have been times in our law when it was permissible for a prosecutor to comment to the jury on a defendant's failure to testify. In earlier periods, and now, such is not the case.

In State v. Benson, supra, defendant was accused of operating a motor vehicle while intoxicated. It was suggested that he go to the hospital and take physical treatment and a blood test. He refused. The question on appeal was whether the admission of evidence relative thereto constituted a denial of a constitutional protection against self incrimination. The evidence was held admissible.

When the Benson case was decided it was permissible for a prosecutor to comment on the defendant's failure to testify. Such is no longer the law. See Griffin v. State of California, infra. However, the comment in Benson, loc. cit., 230 Iowa 1171, 300 N.W. 277, is pertinent:

"Of course, when one is accused of a crime, he does not have to reply to the accusation. But if he declines to reply, his act of silence may be shown to the jury. We are of the opinion that the situation now before us is analogous. The request for a blood test did no more than inferentially accuse the defendant of intoxication. His refusal to submit is similar to a refusal to speak. The jury was told that he did not have to submit. The refusal was merely a circumstance to be considered. The court was right."

Where constitutional requirements as to warning, etc. have been met as in the case before us there is a difference between showing what defendant did and said when arrested and comment to a trial jury on failure to testify.

In 1963 our legislature in a declaration of public policy enacted what is named therein as the "Uniform Chemical Test for Intoxication Act." See Laws of the 60th General Assembly, chapter 114. This law commonly referred to as our "Implied Consent Law" now appears as chapter 321B of our Code.

While some provisions of this act are made applicable to criminal procedure as pointed out, infra, it is basically an administrative act. No criminal penalties are provided, nothing is prohibited, and no act is required. The state, acting through the legislature, has said in substance, "If you want to exercise the privilege of operating a motor vehicle on our highways you agree to the administrative and evidentiary procedure we have outlined."

█ There is no absolute right to drive on the highway under any and all conditions. It is a privilege, not a right. Spurbeck v. Statton, 252 Iowa 279, 289, 106 N.W. 2d 660. It is a privilege enjoyed under the conditions imposed by the legislature. We know of no reason why the state may not impose such reasonable conditions as the legislature prescribes. No one has to accept the conditions imposed and thus make himself subject thereto. No one is required to have a driver's license except as a precedent to driving. It is a condition imposed by the state. We know of no reason why a person in order to enjoy the privilege so granted may not waive such "rights" as he might otherwise have.

III. Section 321B.1 of our Code provides:

"Declaration of policy. The general assembly hereby determines and declares that the provisions of this chapter are necessary in order to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition."

Section 321B.3 provides in part:

"Implied consent to test. Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while in an intoxicated condition, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. * * *"

Other sections provide procedure for taking of a blood sample and administrative procedures. Section 321B.10 makes the results of tests admissible in evidence.

Section 321B.11 provides:

"Proof of refusal admissible. If the person under arrest refuses to submit to the test or tests, proof of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle upon a public highway of this state while in an intoxicated condition."

The issue before us is the constitutionality of this section. The procedure in the trial court was in accord with our statutes.

It should be noted that defendant's refusal to submit to a blood test was not on constitutional grounds. He testified that he did not like to be stuck with a needle. If that is a sound constitutional reason millions of men and women in our armed services have been constitutionally abused.

IV. In Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 the defendant, charged with murder did not testify in his own behalf. The California Constitution provided:

" * * * in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury."

The California trial court's instructions said:

"As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny

or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably· drawn therefrom those unfavorable to the defendant are the more probable."

The Supreme Court of the United States held that the California comment rule violated the Fifth Amendment.

It should be noted that the instructions in Griffin emphasized the unfavorable inferences that may be drawn from failure to testify. No such instruction was given in the case before us. Here defendant did testify and explain his position. Here the court told the jury:

"It is shown by the testimony, and undisputed in the record, that at the time the defendant was being held at the police station in Mt. Pleasant on the charge for which he is now on trial, he was requested by Patrolman Wiele and also by Dr. Couchman to have blood or urine tests to determine alcoholic content, which requests were refused. * * *

"You are instructed that in this case defendant's refusal to submit to any test is a circumstance to be considered by the jury, together with all other facts and circumstances shown by the evidence, in determining the question as to whether the defendant was or was not intoxicated at the time involved in this case."

Admission of evidence and telling the jury that it may be considered is not the same as emphasizing that unfavorable inferences may be drawn from failure to testify. Also evidence as to what a defendand did or refused to do or said incident to arrest after constitutional warning, is not the same as comment on failure to testify at the trial.

The nub of the holding in Griffin appears in the last sentence in the majority opinion. The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

■ Unless the holding in Griffin is to be extended beyond what is said therein and applied to factual situations that are not comparable we do not believe that the evidentiary rulings and the instructions here should be held violative of constitutional protections.

To paraphrase from Mr. Justice Stewart's dissenting opinion in Griffin we do not think our statute "is hardly an idiosyncratic aberration."

V. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 outlined the constitutional safeguards surrounding an accused but did not present a situation comparable to the one here. Here there is no claim that incident to arrest there was any infringement of constitutional rights or any improper custodial interrogation.

Except as the Fourteenth Amendment to the United States Constitution makes the Fifth Amendment applicable to state procedures, there is no claim here as to due process. The issue is under the Fifth Amendment.

VI. A little more than a year after the decision in Griffin and one week after the decision in Miranda, the Supreme Court of the United States decided Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

In Schmerber defendant had been arrested for driving while intoxicated. At the direction of a police officer a blood sample was withdrawn from his body by a physician. Chemical analysis indicated intoxication and the report of this analysis was admitted in evidence at the trial. Receipt of this evidence was objected to on the ground that the blood had been withdrawn despite his refusal to consent to the test. "He contended that in that circumstance the withdrawal of the blood and the admission of

the analysis in evidence denied him due process of law under the Fourteenth Amendment, as well as specific guarantees of the Bill of Rights secured against the States by that Amendment; his privilege against self-incrimination under the Fifth Amendment; his right to counsel under the Sixth Amendment; and his right not to be subjected to unreasonable searches and seizures in violation of the Fourth Amendment."

His several objections were rejected by the Supreme Court.

█ In disposing of the Privilege Against Self-Incrimination claim the court said: "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.

"It could not be denied that in requiring petitioner to submit to the withdrawal and chemical analysis of his blood the State compelled him to submit to an attempt to discover evidence that might be used to prosecute him for a criminal offense. He submitted only after the police officer rejected his objection and directed the physician to proceed. The officer's direction to the physician to administer the test over petitioner's objection constituted compulsion for the purposes of the privilege. The critical question, then, is whether petitioner was thus compelled 'to be a witness against himself.'"

Later in the opinion these statements appear:

"* * * both federal and state courts have usually held that it (the Fifth Amendment) offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to

make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it. * * *

"Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."

If evidence as to refusal, the taking of a blood specimen over objection, and the result of the test is admissible it should follow that evidence of refusal after warning is admissible.

VII. During the last several years decisions throughout the country have clearly demonstrated that the provisions in the Bill of Rights are to be more liberally construed in favor of an accused than formerly. This does not mean that well established rules of construction are to be abandoned. It does not mean that statutory declarations of public policy enacted for the protection of the people should be lightly cast aside. Neither does it mean that an accused should have any greater rights than the people a statute is designed to protect.

█ We have held on many occasions that one challenging a statute has the burden to overcome the presumption it is constitutional and to negative every reasonable basis upon which it may be sustained. State v. Di Paglia, 247 Iowa 79, 85, 71 N.W.2d 601, 49 A.L.R.2d 1223; State v. Stump, 254 Iowa 1181, 1197, 119 N.W.2d 210; Zilm v. Zoning Board, Iowa, 150 N.W.2d 606, 610; State v. Halverson, Iowa, 155 N.W.2d 177, 182.

VIII. We have not previously considered the precise point involved here but have had the Implied Consent Law and

license suspension cases before us on several occasions.

In Spurbeck v. Statton, supra, loc. cit., 252 Iowa 287, 106 N.W.2d 660, we said the danger to be apprehended from driving upon the public highways by one under the influence of intoxicating liquor is such a hazard that summary action by the state is within the proper limits of its police power.

Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W.2d 866 involved an administrative proceeding and not a criminal trial. The accused refused to submit to chemical tests. We upheld the applicable statutes.

In Severson v. Sueppel, Iowa, 152 N.W.2d 281, 284, we said:

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. (Citation) It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor."

In State v. Charlson, Iowa, 154 N.W.2d 829 we quoted the above statement and quoted several sections from the Implied Consent Law.

In the case before us we do not find that defendant's constitutional rights have been violated. He has had a fair trial.

The case is

Affirmed.

GARFIELD, C. J., and LARSON, MOORE, STUART and LeGRAND, JJ., concur.

MASON, RAWLINGS and BECKER, JJ., dissent.