STATE of Iowa, Appellee,

v.

Joseph Francis TIERNAN, Appellant.

No. 55315.

Supreme Court of Iowa.

April 25, 1973.

Martin E. Spellman, Perry, for appellant.

Richard C. Turner, Atty. Gen., C. Joseph Coleman, Jr., Asst. Atty. Gen., and Richard Poffenberger, Perry, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

We affirm defendant's conviction of operating a motor vehicle while under the influence of an alcoholic beverage.

On June 24, 1971 Iowa Highway Patrolman Larry Mathers observed the defendant driving his truck. The truck was being driven in an erratic manner, slid sideways and weaved considerably. The officer's overhead lights and siren failed to stop the truck and it was not until Mathers drove his patrol car in front of defendant and gradually slowed down that defendant stopped.

After defendant was advised of his constitutional rights and submitted to routine balance tests he was arrested. The officer then invoked the provisions of the implied consent law, chapter 321B, The Code. The offer of a blood test was first refused by defendant. He then consented to submit to a breath test, the results of which were admitted at trial. On appeal from his conviction defendant assigns 15 errors which can be treated by grouping them into three categories.

I. The trial court sustained defendant's motion in limine proscribing any mention of the fact a blood test was offered defendant or that he refused it. At trial Officer Mathers, in answering a question put by the county attorney, volunteered the information the blood test had been refused. The question did not suggest any reference to the offer or refusal of a blood test. Defendant's counsel interrupted the answer to object to the testimony. The objection was sustained and the jury was admonished to disregard any testimony relating to a blood test. After the witness was excused defendant moved for a mistrial because he mentioned the blood test. Defendant assigns as error the trial court's refusal to declare a mistrial.

■ The error was in sustaining the motion in limine and hence was in favor of the defendant. Evidence of the offer and refusal of the blood test was admissible under the plain terms of section 321B.11, The Code. We have said: " * * * Such refusal is made admissible by statute. Section 321B.11, Code of Iowa. We held the statute constitutional in State v. Holt, 261 Iowa 1069, 156 N.W.2d 884. If the statute is constitutional and such evidence is made admissible by statute, there was no error in failing to strike it." State v. Heisdorffer, 164 N.W.2d 173, 176 (Iowa 1969).

Evidence of the refusal was not only admissible, it was required as a foundation for any evidence of the breath test. Rodriguez v. Fulton, 190 N.W.2d 417 (Iowa 1971); State v. Hraha, 193 N.W.2d 484 (Iowa 1972); State v. Williams, 201 N.W.2d 710 (Iowa 1972). Notwithstanding the trial court's ruling on the motion in limine, defendant was not entitled to a mistrial by reason of the testimony regarding the offer and refusal of a blood test.

II. In numerous assignments of error defendant strongly challenges the admission into evidence of results of the breath test. He argues the evidence was so insufficient and unreliable as to be inadmissible.

The breath test was administered under a procedure similar to the one later prescribed by the safety commissioner in chapter 1, Title V of the Iowa Depart-

mental Rules. We have previously held "* * * the results of the breathalyzer test * * * should be admitted only upon a showing (1) of the devices and methods approved by the Commissioner of Public Safety for the taking of such tests as provided in section 321B.4 and (2) proof that the test was given by use of the approved devices and methods." State v. Hansen, 203 N.W.2d 216, 223 (Iowa 1972). Here there was substantial compliance with this requirement.

Neither the admissibility nor the sufficiency of the State's evidence is affected by the opinions later expressed by defendant's expert witness on the same subject which the jury might have chosen not to believe. The State relied on two witnesses, Officer Mathers and Mrs. Lynn Calkins, a chemist employed at the state hygienic laboratory. From their testimony it appears they had both been furnished devices and directions from the commissioner for implementing a procedure whereby the officer would gather and the chemist would later analyze the breath specimen. Defendant's challenge is all embracing and addressed to every device and step in the procedure.

The device used by the officer is shown to be extremely simple in conception and operation, reflecting his limited role in only gathering the specimen. Its operation is almost exclusively mechanical. A soft metal tube, called an indium tube, is placed in a box and electrically heated. This heating process, the only non-mechanical part of the specimen gathering procedure, is necessary to prevent moisture gathering within the tube. Such moisture might result from the variance between the temperature of the tube and the breath. As hereafter explained the presence of moisture might invalidate the test. The person furnishes the sample by blowing through the tube which has a balloon attached to the other side. While breath is passing through the tube the box is closed on it in such a manner as to crimp the tube. The closing traps breath specimens in three separate chambers, each of which can be analyzed. The officer testified the "machine was working acceptably (and) that there had been nothing damaged * * *." Mrs. Calkins testified the kit received from the officer was in good shape and was properly crimped.

The device used by the chemist at the laboratory was shown to be much more complex. It is called a gas chromatograph intoximeter. The chemist stated the scientific principle of gas chromatography, used in the intoximeter, has been known in analytical chemistry for many years and applied to breath-alcohol analysis since 1968. The instrument separates the different molecules by their molecular weight and size. The ethyl alcohol is then separated from the other parts that may be contained in the breath. The ethyl alcohol will come off at a certain point and will form a peak on a chart. From the height of the peak the chemist is able to tell what the concentration of alcohol is. By comparing the heights and the known concentration of the standard the chemist can determine concentration of alcohol in each of the samples. Mrs. Calkins stated:

"* * * It's a different type than your normal chemical test which requires a color change. This is more or less a filtering, a separating device, in order to separate one from the other and then to measure it from electricity is much more sophisticated than the older color change." She further testified that the principle that alcohol is passed off through the lungs from the body has been accepted in breath alcohol testing since the early 1930's and that she believed the principle to be sound. She testified she knew of nothing unusual in this test which might cause it to be inaccurate and that such tests come within 5 percent of the actual blood-alcohol concentration. Mrs. Calkins testified that her intoximeter was checked by her on a regular basis and that the device used by the officer while not checked by her could not malfunction in such a way as to prejudice the person being tested. If the indium

tube, for some reason, was not properly heated that fact would be revealed in her analysis by an impossibly high reading and the test would be rejected. If the chambers are not tightly sealed in the crimping process specimens will dissipate lowering the reading.

Defendant complains the procedure prescribed was not followed in this case in that the balloon attached to the device was not completely filled. According to the testimony the balloon does not have any function except to encourage the furnishing of "deep lung" rather than alveolar or mouth air. Mrs. Calkins testified that the supplying of alveolar rather than deep lung air would cause the test to be lower.

■ It was not error to admit evidence of the test results. On this record we reject defendant's contention the collection device was not shown to be in good working order or properly tested. Defendant cites authorities from other states requiring periodic testing of equipment, but in those states the equipment involved is shown to be much more complex than a mere crimping device for a tube. If there was any inadequacy in showing the tube was heated, it would not preclude admitting the test results. The evidence could still be received in view of the further testimony that the moisture, if present, would have invalidated rather than altered the test. There was sufficient foundation of the scientific principles and condition of the devices for admission of the evidence.

■ III. Finally defendant challenges the constitutionality of section 321.281, The Code. This argument was submitted originally by way of demurrer and was preserved throughout the trial for appeal. Defendant argues the phrase "under the influence of an alcoholic beverage" is so broad, vague and indefinite that persons of common intelligence are required to guess its meaning. He argues the public is not fairly put on notice as to what acts are included and that the phrase fails to establish measurable standards for determining guilt.

The trial court was right in rejecting this argument.

"* * * One form of statute prescribes the offense in terms of driving 'while under the influence of intoxicating liquor,' another in terms of driving 'while in an intoxicated condition,' and still another in terms of driving 'while intoxicated or in any degree under the influence of intoxicating liquor.' Such statutes have been held not to be unconstitutional for indefiniteness or lack of intelligibility because they do not define the term 'intoxicated condition' or 'under the influence of intoxicating liquor.' The phrases 'under the influence of intoxicating liquor' and 'in an intoxicated condition' have been generally held to be synonymous or to mean substantially the same thing, * * *." 7 Am. Jur.2d, Automobiles and Highway Traffic, section 257, page 810. See also Cook v. State, 220 Ga. 463, 139 S.E.2d 383; State v. Graham, 176 Minn. 164, 222 N.W. 909. The statute is not unconstitutionally vague.

Affirmed.