STATE of Iowa, Appellee,

v.

Robert Earl YOUNG, Appellant.

No. 56533.

Supreme Court of Iowa.

Aug. 29, 1975.

Joseph Z. Marks and Joseph L. Marks, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David E. Linquist, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Following judgment entered on his conviction for O.M.V.U.I., § 321.281, The Code, defendant appeals, raising evidentiary issues relating to chemical tests for intoxication. We affirm.

On October 11, 1972, Des Moines police officer John Rector was called to an accident scene. Defendant Young had driven his car into the rear of another vehicle. Several witnesses subsequently testified concerning defendant's actions and demeanor after the accident and opined he was drunk. Rector told defendant he felt the latter had been operating his vehicle while under the influence of intoxicating liquor, and that he did not have to do or say anything.

Officer Rector then asked defendant to take a "FAIT" test, informing him the test results could not be used against him and the test was merely for the purpose of making a probable cause determination. Defendant took the test. Following standard Des Moines police procedure, it was then destroyed.

Defendant was arrested and taken to the police station where the "Implied Consent" (chapter 321B, The Code) provisions were explained to him. The statutory procedures were followed and defendant refused the offered blood and breath tests.

Defendant filed a pre-trial motion to suppress 1) all evidence of his refusal to take a blood or breath test and 2) all evidence relating to the results of the FAIT test.

Trial court suppressed all evidence relating to the FAIT test on the ground defendant was persuaded to take the test on the representation it would not be used against him in court. The motion was overruled with respect to his refusal to take the chapter 321B blood and breath tests. Defendant asserted he should be permitted to show his cooperation in taking the FAIT test, but the court, over defendant's objection, held neither defendant nor the State could introduce any evidence relative to the FAIT test.

In this appeal defendant asserts the court 1) erroneously refused to suppress evidence of his refusal to take the chapter 321B blood and breath tests, and 2) wrongly prohibited him from showing he had consented to the FAIT test.

I. The procedural and substantive law of implied consent in force at the time of these events was summarized in *State v. Jensen*, 216 N.W.2d 369, 372 (Iowa 1974):

"(1) There must be a *written* request by the officer to the arrested driver for permission to take a blood test. (2) If the request for a blood test is refused the officer must then make a written request for a breath or urine test. (3) There must be a showing the officer is properly qualified under the statute to administer the test. (4) There must be proof the test was given by the use of devices and methods approved by the commissioner of public safety as provided by section 321B.4, The Code. (Citations omitted.)

Where the results of a breath test are offered it is mandatory to show the driver's prior refusal to take the blood test. (Citation omitted.) Evidence of a refusal to submit to a test is inadmissible where the results would be inadmissible. (Citation omitted.) Where the proper procedure is followed, the test results are admissible in either a civil or criminal action. Section 321B.10, The Code. Where the proper procedure is followed, a refusal to submit to the test is likewise admissible. Section 321B.11, The Code."

Defendant contends officer Rector violated the procedure for invoking Iowa's implied consent law by asking him to submit to a FAIT test. Defendant's rationale proceeds from the premise that a FAIT test is a "chemical test" of breath under § 321B.3, The Code, 1971. He then argues the statute requires a blood test to be offered before any other type test may be offered. Because he was first offered a FAIT test, he concludes trial court should have suppressed evidence of his post-arrest refusals to take the blood and breath tests. See *State v. Hall*, 203 N.W.2d 375, 376 (Iowa 1973); *State v. Williams*, 201 N.W.2d 710 (Iowa 1972); *State v. Hraha*, 193 N.W.2d 484, 486–490 (Iowa 1972); *Rodriguez v. Fulton*, 190 N.W.2d 417 (Iowa 1971).

It is important in these circumstances to know the purpose, capacity and chemical reactions of the FAIT test. Our frustration with the record before us in this regard is not as total as that in *State v. Weger*, 211 N.W.2d 322, 323 (Iowa 1973) where we observed "the limited record made here does not disclose that the result of this test, although based on a chemical reaction, is accurate enough to be admitted into evidence over valid objection, or furnish a basis for license revocation." See also *State v. Pardock*, 215 N.W.2d 344, 348–349 (Iowa 1974). Here the police officer (admittedly not a chemist) provided testimony tending to prove the FAIT test merely detects the presence of, but not the amount of, alcohol in the blood. In the FAIT test the person under examination blows up a balloon by use of a device which passes the breath through a tube containing chemicals. Alcohol in the breath causes the chemicals to change color. The letters "FAIT" are variously indicated in this record as abbreviations for "Field Alcohol Indicator Test", "Field Alcohol Intoxication Test" and "Field Alcohol Investigation Test".

The State argues because the FAIT test is thus qualitative and not quantitative it is not a chemical test within the meaning of §§ 321B.3 and 321B.4 which provide the chemical test given an operator must be

" * * * for the purpose of determining the alcoholic content of his blood * * *." This interpretation is supported by § 321B.10 which provides " * * * evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible."

It is apparent chapter 321B procedures relate almost exclusively to the post-arrest withdrawal and testing of body specimens. The resulting quantitative test results are admissible in evidence in civil or criminal trials. Section 321B.10, The Code. Refusal to submit to such a test furnishes ground for license revocation. Section 321B.7, The Code.

Nowhere in chapter 321B do we find any legislative intent to control or coerce qualitative pre-arrest tests to determine the presence of alcohol in the blood. The only pre-arrest concern expressed in this legislation is that there be reasonable grounds to believe that the person against whom implied consent is invoked has operated a motor vehicle while under the influence of an intoxicating beverage. Section 321B.3, The Code.

 It appears clear the results of the FAIT test disclosed by this record, even if the test followed chapter 321B procedures, would be inadmissible. Admission of the results of a breath test requires proof " '(1) of the devices and methods approved by the Commissioner of Public Safety for the taking of such tests as provided in section 321B.4 and (2) proof that the test was given by use of the approved devices and methods.' " *State v. Tiernan*, 206 N.W.2d 898, 900 (Iowa 1973) *quoting State v. Hansen*, 203 N.W.2d 216, 223 (Iowa 1972); see *State v. Jensen*, supra at 372. The commissioner has approved only the indium encapsulation breath crimper device, Iowa Departmental Rules, Public Safety, ch. 12, rule 12.1, p. 788 (1973).

 We hold under the record made in this case the FAIT test is not among the

quantitative tests contemplated by chapter 321B. This being so, the offering of this test before invoking subsequent post-arrest implied consent procedures did not affect the validity of those procedures insofar as they furnished a foundation for showing defendant refused the chapter 321B blood and breath tests.

II. Defendant contends trial court should not have suppressed evidence of his willingness to take the FAIT test, particularly where evidence was received of his refusal to take the chapter 321B tests.

■ Of course, evidence of the refusal of the statutory tests is clearly admissible. It is made so by § 321B.11, The Code, and the statute is constitutional. *State v. Holt*, 261 Iowa 1089, 156 N.W.2d 884 (1968). There was thus no error in admitting evidence of refusal (*State v. Tiernan*, supra at 899) where statutory procedures were followed. *State v. Hall*, supra at 376.

Before trial defendant successfully moved to suppress all evidence of the FAIT test results, on the ground officer Rector had induced him by "trick, fraud and deceit" to give evidence against himself. Defendant does not explain how his conduct which resulted from the alleged trickery, fraud and deceit could have any natural and logical tendency to prove he was cooperative.

The record shows when defendant was offered the FAIT test he was advised the test results could not be used in evidence against him. There is no proof the State intended to breach this assurance. Officer Rector's destruction of the test result evidences good faith in his pre-testing representation.

Defendant had everything to gain and nothing to lose by taking the test since the results could not be offered in evidence. The analogy to the polygraph cases is compelling. In those decisions under similar circumstances courts have reasoned evidence of a defendant's willingness to take the test is wholly self-serving and of little probative value. See *State v. Carnegie*, 158

Conn. 264, 272, 259 A.2d 628, 632 (1969), cert. denied, 396 U.S. 992, 90 S.Ct. 488, 24 L.Ed.2d 455 (1969); *State v. Rowe*, 77 Wash.2d 955, 958–959, 468 P.2d 1000, 1003 (1970); Annot., 95 A.L.R.2d 819, 821 (1964); cf. *State v. Green*, 254 Iowa 1379, 1384–1385, 121 N.W.2d 89, 91–92 (1963).

■ We agree defendant should not be permitted to invoke such a heads-I-win-tails-you-lose position against the State. Trial court did not err in suppressing evidence of defendant's willingness to take a test when all knew the results were inadmissible.

Affirmed.

MOORE, C. J., and REES and HARRIS, JJ., concur.

UHLENHOPP, J., concurs specially.

UHLENHOPP, Justice (concurring specially).

I concur in the court's opinion but think defendant's refusal to take chapter 321B blood and breath tests was admissible whether the FAIT test was or was not quantitative.

As the court states, "Officer Rector then asked defendant to take a 'FAIT' test, *informing him the test results could not be used against him* and the test was merely for the purpose of making a probable cause determination." (Italics added.) I believe an officer must comply with chapter 321B procedures *when he proceeds under chapter 321B*. Here the officer was not proceeding under chapter 321B when he obtained the FAIT test. He told defendant that "the test results could not be used against him. . . ."

Since the officer was not proceeding under chapter 321B in obtaining the FAIT test, I see no reason why he could not subsequently, and within the two-hour period after arrest, proceed under chapter 321B. When Officer Rector did proceed under chapter 321B, he of course had to follow its

procedures—but that he did. As the court further states, "The statutory procedures were followed and defendant refused the offered blood and breath tests."

I believe, therefore, that defendant's refusal to take the chapter 321B tests was admissible, and that the FAIT test was irrelevant to the question of the admissibility of the refusal to take the chapter 321B tests.

Reynoldson, J., concurred specially and filed opinion in which Rees and Harris, JJ., joined.

Uhlenhopp, J., dissented in part and filed opinion.