366 So.2d 318 (1979)
In re Lawrence Glen HILL
v.
STATE of Alabama.
Ex parte Lawrence Glen Hill.
77-542.
Supreme Court of Alabama.
January 12, 1979.
*319 James T. Baxter, III, of Berry, Ables, Tatum, Little & Baxter, Huntsville, for petitioner.
William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, respondent.
TORBERT, Chief Justice.
Lawrence Glen Hill was convicted in Madison County Circuit Court of manslaughter in the first degree and sentenced to eighteen months imprisonment. Certiorari was granted by this court to review the decision of the Court of Criminal Appeals affirming Hill's conviction. We affirm.
A full statement of the facts is set forth in the opinion of the Court of Criminal Appeals. Briefly, the pertinent facts are these. On January 10, 1976, petitioner Hill was driving home with his wife from a housewarming party where he had consumed two or three beers and a scotch and water. Before reaching home, Hill's vehicle collided with a vehicle driven by David Lee and occupied by Mark Pizitz, age fifteen. As a result of the collision, Pizitz sustained severe head injuries of which he died fourteen hours later.
Several witnesses at the scene testified that Hill appeared to be intoxicated and acted in an uncooperative manner when offered emergency treatment. About an hour after the accident at the Huntsville Hospital emergency room, Hill was placed under arrest for driving while intoxicated. He was requested "on more than ten occasions" to submit to either a blood alcohol test or a breath test. He was informed that a refusal to submit to a test could result in the suspension of his driver's license for a period of at least forty-five days.
Hill initially consented to a blood test on the condition that his personal physician perform the test. When an effort to secure his physician failed, Hill refused to submit to a test. He was then taken to the Huntsville city jail where he was again requested to submit to a breath test and again refused unless he first be allowed to consult with his attorney. About three hours after the accident Hill's attorney arrived at city jail. *320 Hill then agreed to submit to a blood alcohol test, but upon learning that there may have been people in the emergency room of the hospital who wished to do Hill harm, his attorney stated: "Just forget it. We don't want a blood test."
Prior to trial Hill filed a motion in limine to prevent admission of evidence of his refusal to take a blood test. The motion was denied, and at trial the police officers testified as to Hill's refusal to take a blood or breath test and the prosecutor commented upon this refusal in closing arguments. Hill testified in his own behalf admitting that he had consumed alcoholic beverages on the night in question. The jury convicted Hill of first degree manslaughter. On appeal the Court of Criminal Appeals upheld the constitutionality of the Alabama Chemical Test for Intoxication Act[1] and found no error in the admission of Hill's refusal to submit to a blood test and the prosecutor's comment thereon. Since the question of admission of a defendant's refusal to submit to a chemical test for intoxication is one of first impression in this State, we granted certiorari.
Petitioner Hill contends that the admission of such evidence violates both state and federal guarantees against self-incrimination.
Initially, it must be determined if evidence of refusal to submit to a chemical test is relevant, i. e., whether it has sufficient probative value on the issue of intoxication to be admitted into evidence. Where a defendant has refused to submit to a chemical test, the courts considering the question have been split in deciding whether such a refusal has sufficient probative value to be admitted into evidence, though a greater number of cases have held in favor of admissibility. The better reasoned decisions hold that refusal to take a chemical test for intoxication may indicate the defendant's fear of the results of the test and his consciousness of guilt, and if the defendant has some other explanation for the refusal, such explanation can be considered by the jury in determining whether the refusal is to be construed as consciousness of guilt. See, e. g., State v. Durrant, 55 Del. 510, 188 A.2d 526 (1963); People v. Conterno, 170 Cal.App.2d Supp. 817, 339 P.2d 968 (1959); State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958); State v. Benson, 230 Iowa 1168, 300 N.W. 275 (1941); Gardner v. Commonwealth, 195 Va. 945, 81 S.E.2d 614 (1954).
In City of Westerville v. Cunningham, 15 Ohio St.2d 121, 239 N.E.2d 40 (1968), a jury found defendant guilty of operating a motor vehicle while intoxicated. Evidence of defendant's refusal to take an intoxication test was admitted at trial. In holding that the evidence was probative as to guilt or innocence and was properly admitted, the court stated:
Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt, especially where he is asked his reason for such refusal and he gives no reason which would indicate that his refusal had no relation to such consciousness of guilt.
We conclude that, in the instant case, the defendant's refusal to take a chemical test for intoxication would have probative value on the question as to whether he was intoxicated at the time. This conclusion is supported by the recent decision in State v. Cary (1967), 49 N.J. 343, 230 A.2d 384. See People v. Sudduth (1966), 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401, and annotation, 87 A.L.R.2d 370 at 384 et seq. See also People v. Ellis *321 (1966), 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393.
239 N.E.2d at 41.
In People v. McGinnis, 123 Cal.App.2d Supp. 945, 267 P.2d 458 (1953), defendant was convicted for driving while intoxicated, and evidence was admitted at trial of his refusal to submit to an intoximeter test. The court held the evidence was admissible since the jury could conclude that it was circumstantial evidence of guilt. The court stated:
The jury, of course, might not have been persuaded that it was fear of the result that dictated defendant's refusal, but have believed that he had some other reason for declining to cooperate. This possibility, however, is not a basis for saying that the evidence should not have been received.
267 P.2d at 459.
The court also stated:
We are not prepared to say that it would do "violence to reason" for the jury to conclude that the defendant refused to take the test because he did not want to run the risk that the test would furnish evidence of the condition in which he knew himself to be. Therefore, we should not, and do not, disapprove the trial court's action in admitting the evidence.
Id. at 460.
Most of the decisions reaching a contrary result do so, in essence, on the premise that refusal may be dependent or conditioned upon reasons other than consciousness of guilt, and therefore, is not probative as to intoxication. See State v. Munroe, 22 Conn.Supp. 321, 171 A.2d 419 (1961) (exercise of right to remain silent); Stuart v. District of Columbia, 157 A.2d 294 (D.C.Mun.App.1960) (exercise of statutory right to refuse); State v. Paschal, 253 N.C. 795, 117 S.E.2d 749 (1961) (unwilling if defendant had to pay for test); City of Columbus v. Mullins, 162 Ohio St. 419, 123 N.E.2d 422 (1954) (unwilling unless personal physician conducted test); Engler v. State, 316 P.2d 625 (Okl.Crim.App.1957) (indication of defendant's fear that test results are inaccurate). At least one case has held evidence of refusal inadmissible on the conclusion that such evidence simply is not probative. See Duckworth v. State, 309 P.2d 1103 (Okl.Crim.App.1957) ("The refusal to take the intoximeter test constitutes what might be termed a negative predicate which was productive of nothing more than sheer speculation, surmise, and innuendo"). We feel, however, that such evidence is probative and should be presented to the jury for their consideration rather than excluding it altogether. Any circumstances tending to show the refusal was conditioned upon factors other than consciousness of guilt may properly be considered by the jury in determining the weight to attach to the refusal. Therefore, the evidence of Hill's refusal to submit to a chemical test for intoxication was relevant and properly admitted. Whether his refusal was due to the desire for consultation with his physician or attorney or to the fear of bodily harm, rather than consciousness of guilt, was best determined by the jury.
The fifth amendment[2] of the United States Constitution provides the following guarantee against self-incrimination: "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S.Const. amend. V. The United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), has interpreted this privilege as protecting "an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . ." Id. at 761, 86 S.Ct. at 1830. The Court noted that the distinction has emerged between compulsion of communications or testimony on the one hand, and compulsion which makes the accused the source of real or physical evidence on the other, with the latter being beyond the scope of the privilege. The Court stated: "[B]oth federal and state *322 courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Id. at 764, 86 S.Ct. at 1832.
The Alabama Constitution contains the following provision: "That in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself . . . ." Ala.Const. art. I, § 6. The phrase "to give evidence against himself" seems, at first glance, broader than the federal provision by encompassing real or physical evidence as well as testimonial communications, and originally, was so construed. See, e. g., Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960); Myhand v. State, 259 Ala. 415, 66 So.2d 544 (1953); Cooper v. State, 86 Ala. 610, 6 So. 110 (1889). However, this interpretation was abandoned in Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968) which held that despite the difference in language the Alabama privilege against self-incrimination offers the same guarantee as that contained in the Federal Constitution. 283 Ala. at 194, 215 So.2d 261. Thus, the interpretation of the fifth amendment in Schmerber is likewise controlling as to the interpretation of art. I, section 6 of the Alabama Constitution. Other states with constitutional self-incrimination provisions identical to Alabama's have adopted this interpretation. See, e. g., Application of Baggett, 531 P.2d 1011,1021 (Okl.1974) (citing authorities); State v. Moore, 79 Wash.2d 51, 483 P.2d 630 (1971). Accord, Schmerber v. California, supra at 761 n.6, 86 S.Ct. 1826. Therefore, we conclude that the protection of both the Alabama and federal constitutional provisions extends only to evidence of a testimonial or communicative nature.
The majority of the states considering the question have held that admission of evidence of refusal to submit to a chemical test for intoxication does not violate the privilege against self-incrimination. Many of the courts reaching this result do so on the ground that an accused has no constitutional or statutory right to refuse a chemical test, and since the results of a test taken against his will are admissible, evidence of refusal should also be admissible. See, e. g., Campbell v. Superior Court, 106 Ariz. 542, 479 P.2d 685 (1971); People v. Conterno, 170 Cal.App.Supp.2d 817, 339 P.2d 968 (1959); State v. Holt, 261 Iowa 1089, 156 N.W.2d 884 (1968); City of Westerville v. Cunningham, supra.
The Supreme Court in Schmerber[3] held there is no constitutional right to refuse to submit to a blood test, and the results of such a test taken against an accused's will are admissible at trial. States which have statutory provisions similar to the Alabama Chemical Test for Intoxication Act have likewise held there is no statutory right of refusal. See, e. g., Campbell v. Superior Court, supra; Bush v. Bright, 264 Cal. App.2d 788, 71 Cal.Rptr. 123 (1968); State v. Tabisz, 129 N.J.Super. 80, 322 A.2d 453 (1974). We agree with such an interpretation.
The Alabama Chemical Test for Intoxication Act adopts a statutory scheme whereby a person using the public highways impliedly consents to a chemical testing of his blood, breath, or urine when lawfully arrested for an offense involving the operation of a motor vehicle while under the influence of intoxicating liquor. Ala.Code § 32-5-192(a) (1975). The act contains certain statutory presumptions of intoxication according to the percent by weight of alcohol found in the person's blood. Id. § 32-5-193. The act provides procedures for suspension of the person's driver's license for forty-five days in the event he refuses[4] to *323 submit to such a test, and the person is entitled to a warning to this effect. Id. § 32-5-192(a), (c). Moreover, the act expressly provides for admission of evidence of refusal to submit to a test:
If a person under arrest refuses to submit to a chemical test under the provisions of this division, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor.
Ala.Code § 32-5-193(h) (1975).
An act of this type was first enacted in New York[5] and arose out of dissatisfaction with alternative proposals for protecting against intoxicated drivers by either making chemical tests compulsory or requiring actual consent in the form of a written waiver made at the time of application for a driver's license. Slough & Wilson, Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing, 44 Minn.L.Rev. 673, 702 (1960). The New York Act was not intended to provide a "right" to refuse a chemical test even though, by the terms of the act, the police must acquiesce in a refusal and may not compel a person to submit to a test against his will.
Paradoxically, however, the New York law also provides that, although the driver has constructively consented to submit to a chemical test, he may refuse to take the test despite his imputed promise to consent. If he refuses to submit and therefore does not fulfill his implied agreement, he automatically forfeits the privilege of using the highways of the state. In effect, therefore, he loses his driver's license or nonresident operating privilege. This curious juxtaposition of mandatory consent with a freedom of refusal provides further insurance against the unseemly struggles that are so likely to arise when police and citizen fail to appreciate the import of a common purpose.
Id. at 702.
Therefore, it seems that the act does not contemplate a per se "right" of refusal, rather this acquiescence in refusal is in the posture of avoiding potential violent conflicts. The New York courts have interpreted the act as follows: "[T]his `right' of refusal is not really a right in the sense of a fundamental personal privilege, but, rather, was merely an accommodation to avoid a distasteful struggle to forcibly take blood." People v. Paddock, 29 N.Y.2d 504, 323 N.Y. S.2d 976, 977, 272 N.E.2d 486 (1971). In interpreting substantially similar acts, other courts have reached the same result. See Campbell v. Superior Court, supra ("This language does not give a person a `right' to refuse to submit to the test only the physical power"); Bush v. Bright, supra ("The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is `deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates"). But see Application of Bagget, supra. Moreover, the acts do not seem to grant a right of refusal since they exact a penalty for refusal in the form of suspension of the accused's driver's license; and in some states, including Alabama, they extract the further penalty of expressly allowing evidence of refusal to be admitted at trial. Accordingly we do not interpret the Alabama Chemical Test for Intoxication Act as providing a "right" of refusal.
As can be expected, those states which recognize a statutory right to refuse do not allow evidence of such refusal. See, e. g., Duckworth v. State, supra; State v. Severson, 75 N.W.2d 316 (N.D.1956)[6]. But see State v. Bock, 80 Idaho 296, 328 P.2d *324 1065 (1968). However, many of these statutes differ from the Alabama act in that they make submission to a test voluntary on the accused's part and do not operate on a theory of implied consent.[7]See, e. g., State v. Severson, supra; Stuart v. District of Columbia, supra.
The most compelling argument against admission of refusal and comment thereon is that the refusal, unlike the results of the test, is a communication, and as a communication, falls within the privilege against self-incrimination. See Comment, Constitutional Limitations on the Taking of Body Evidence, 78 Yale L.J. 1074,1082-85 (1969). This position was adhered to in People v. Rodriguez, 80 Misc.2d 1060, 364 N.Y.S.2d 786 (1975) where defendant was indicted for resisting arrest and driving while intoxicated. The court held it was improper to admit evidence of refusal to submit to a chemical test, stating:
[T]he withdrawal of blood and the use of its analysis did not involve evidence which was testimonial or communicative in origin. The same cannot be said, however, for a refusal to take the prescribed chemical tests. Refusal is, by definition, communication. As communication it falls within the protective cloak of the Fifth Amendment.
Our law has long recognized this principle. Indeed, it "is well settled that where a defendant is under arrest he is under no obligation to answer questions, and that his failure to do so creates no inference against him because of silence or his refusal to reply." . . . A statute which endeavors to compel such communication under penalty of having the refusal admitted in evidence, presumptively as evidence of consciousness of guilt . . . compels a defendant to bear witness against himself, in violation of his rights under the Fifth Amendment.
364 N.Y.S.2d at 790. Accord, State v. Andrews, 297 Minn. 260, 212 N.W.2d 863 (1973). This result is based in part upon the rationale that because an accused has the right to remain silent, admitting evidence of refusal would penalize him for doing that which he has an absolute right to do.[8] However, the accused has no absolute right to refuse a blood test and admitting evidence of refusal does not penalize him for exercising his right. People v. Sudduth, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1966); People v. Ellis, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966); State v. Holt, supra. "[A]dmission of . . . refusal to take a chemical test for intoxication and comment . . . thereon would not dilute any constitutional right of defendant." City of Westerville v. Cunningham, 239 N.E.2d at 42.
The court in Rodriguez also states the statute "endeavors to compel such communication [refusal] under penalty of having the refusal admitted in evidence." However, these acts do not compel refusal. In fact, just the opposite is contemplated. The purpose of conducting a chemical test is to obtain physical evidence and any evidence of refusal is merely incidental. As Justice Traynor stated in People v. Ellis, supra: "[It] can scarcely be contended that the police, who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence [of refusal]." 421 P.2d at 397.
But more importantly, a refusal by itself is not a testimonial communication so as to bring it within the privilege against self-incrimination; rather, it is only conduct which gives rise to an inference of consciousness *325 of guilt. Campbell v. Superior Court, supra; People v. Sudduth, supra; City of Westerville v. Cunningham, supra. Cf. State v. Cary, 49 N.J. 343, 230 A.2d 384 (1967) (refusal to speak for voice identification shows consciousness of guilt).
This position was stated most cogently in People v. Ellis, supra, where an accused refused to submit to a voice identification test, and evidence of the refusal was admitted at trial:
Nor was defendant's refusal to "display his voice" itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody. . . false alibi . . . flight. . . suppression of evidence . . . and failure to respond to accusatory statements when not in police custody. . ., its admission does not violate the privilege. Moreover, as in the foregoing examples, the evidence did not result from a situation contrived to produce conduct indicative of guilt.
421 P.2d at 397.
Although inferences as to the accused's consciousness of guilt may be drawn from his conduct, conduct is not a testimonial or communicative statement of guilt. "By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind." 421 P.2d at 397-98. Cf. 2 Wigmore on Evidence § 267 (3d ed. 1940).
We note that the Supreme Court in Schmerber cautioned:
[I]ncriminating evidence may be an unavoidable by-product of the compulsion to take the test, especially for an individual who fears the extraction or opposes it on religious grounds. If it wishes to compel persons to submit to such attempts to discover evidence, the State may have to forego the advantage of any testimonial products of administering the testproducts which would fall within the privilege. Indeed, there may be circumstances in which the pain, danger, or severity of an operation would almost inevitably cause a person to prefer confession to undergoing the "search," and nothing we say today should be taken as establishing the permissibility of compulsion in that case. But no such situation is presented in this case. See text at n. 13 infra.

384 U.S. at 765 n.9, 86 S.Ct. at 1833.
Although it is unclear exactly what sort of testimonial products the Court had in mind, it seems the Court was Concerned with testimonial statements in the nature of a confession. See State v. Andrews, supra (Peterson, J., dissenting). In any event, a refusal to submit to a chemical test is not a testimonial communication. The Court's concern is merely to insure the full protection of the privilege against unintended coercive pressures which may arise due to the severity of a particular procedure or to intense individual reactions or beliefs, E. g., fear or religious beliefs. However, the likelihood of such coercive pressures is minimal,[9]id., and no such coercive situation was present in the instant case.
Therefore, we hold that the refusal to submit to a chemical test for intoxication is not a compelled testimonial communication and the admission of evidence of refusal and comment thereon does not violate the accused's privilege against self-incrimination. Accordingly, the decision of the Court of Criminal Appeals must be affirmed.
AFFIRMED.
BLOODWORTH, MADDOX, JONES and ALMON, JJ., concur.
*326 BEATTY, J., concurs specially.
EMBRY, J., with whom FAULKNER and SHORES, JJ., join, dissents.
BEATTY, Justice (concurring specially):
The majority of cases allowing evidence of a refusal to submit to a sobriety test do so on the basis of relevancy. That aspect of the law has been amply treated in the majority opinion. In appreciating that aspect it should be noted that a factual circumstance may be relevant upon an issue, and therefore admissible, even though that circumstance standing alone would be incapable of proving the issue. Ensley Holding Co. v. Kelley, 229 Ala. 650, 158 So. 896 (1935); Farmers' Mutual Ins. Assoc. of Alabama v. Stewart, 192 Ala. 23, 68 So. 254 (1915). All that is required under the rule of relevancy is that the matter sought to be admitted sheds light on the main issue (intoxication here), I. e., establishes a logical and reasonable inference in support of that issue. George D. Witt Shoe Co. v. Mills, 224 Ala. 500, 140 So. 578 (1932). In that connection, circumstances of conduct and appearance have been held relevant on the issue of intoxication. Southern Natural Gas Co. v. Davidson, 225 Ala. 171,142 So. 63 (1932). On that basis it was not error to admit the refusal here because it would reasonably tend to establish fear of an unfavorable result, and that fact logically is tied to the ultimate issue of intoxication, even though it may appear to be a weak connection. See 29 Am.Jur.2d, Evidence, § 252.
EMBRY, Justice (dissenting):
I would agree with the Court of Criminal Appeals of Oklahoma, stated in Duckworth v. State, 309 P.2d 1103 (1957), that refusal to take the intoximeter test is not probative, and is productive of nothing more than speculation, surmise, and innuendo. Admission of such refusal would dangerously infringe upon one's right not to be compelled to give evidence against himself; a right guaranteed to him under the Constitution of Alabama.
FAULKNER and SHORES, JJ., concur.
NOTES
[1] Ala.Code § 32-5-190 to -194 (1975).
[2] The fifth amendment was held applicable to the states by way of the fourteenth amendment in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
[3] The Court expressly refused to consider the question presented in this case. 384 U.S. at 765 n.9, 86 S.Ct. 1826.
[4] The person cannot be compelled to submit to a test against his will: "If a person under arrest refuses . . . to submit to a chemical test . . . none shall be given . . . ." Ala. Code § 32-5-192(c) (1975).
[5] N.Y.Laws 1953, ch. 854, N.Y.Vehicle & Traffic Law, & 71-a.
[6] Since the time of the decision in Severson, North Dakota has revised its act to adopt a theory of implied consent similar to the Alabama act. However, our research reveals no interpretation of this revision as yet. See N.D. Cent.Code § 39-20-01 to -14 (1960).
[7] The New Jersey Act was a typical example; however, it was revised in 1966 to eliminate the necessity for express consent and to substitute in its place the theory of implied consent. The New Jersey courts have said the revision eliminates the right of Refusal and the resulting inadmissibility: "It follows that since the necessity for express consent to submit to the test has been eliminated and there is no longer a right to refuse to take the rest, the failure of one accused to submit to the test is properly admitted into evidence." State v. Tabisz, 322 A.2d at 454.
[8] This rationale is apparently based upon the decision in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) where it was held that comment on a defendant's refusal to testify violates his right to remain silent.
[9] The Court in Schmerber recognized that a blood test is ordinarily not such a threatening procedure: "Such tests [blood tests] are a common-place in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." 384 U.S. at 771, 86 S.Ct. at 1836.

Moreover, the Court implied that an alternative method of testing may eliminate any such coercive pressures: "Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the `breathalyzer' test . . . ." Id.