James Leonard Hanks was indicted on December 11, 1986, on a charge of manslaughter in violation of Code 1975, § 13A-6-3, and he was found guilty by a jury of vehicular homicide. The indictment grew out of a traffic accident in Mobile County, Alabama, on May 14, 1986, in which the Toyota Celica automobile Hanks was driving ran into the rear of a large trash truck, killing the young woman in the passenger seat of his vehicle and injuring Hanks.
The record indicates that after the accident Hanks was taken to the University of South Alabama Medical Center. He had a head injury and was placed on a bed in room 9 of the emergency department. Suzanne Gramlich, the head nurse in the emergency department, was in the room, along with officer Deborah Hendricks of the Mobile Police Department. Also present in the room with Hanks was his father, Dr. Bill Hanks. The officer explained to Hanks's father that the police wanted permission to obtain legal specimens of blood and urine. The officer made the request generally, but was looking at Hanks's father, who spoke up immediately and refused to allow the specimens to be taken.
Suzanne Gramlich, the head nurse who was present at the time the request was made, testified that she did not know whether Hanks's eyes were open or were closed, or whether he was asleep or awake. She said he was lying on the bed, silent. Hanks never had an opportunity to refuse the blood or urine tests. The officer left the room after talking with Hanks's father and never asked Hanks directly for permission to take the blood and urine specimens. Dr. Bill Hanks, the father, died before the trial.
Hanks was sentenced to five years in the state penitentiary, with a split sentence. He was ordered to spend 90 days in a "jail-like facility" and thereafter to be placed on formal probation. His probation was conditioned on his staying out of trouble and on his completing a 13-month course at the "Outreach Program." He was further ordered to pay $1000 under the Crime Victims Compensation Act and to pay the cost of the proceeding.
Hanks appealed to the Court of Criminal Appeals, which affirmed both the conviction and the sentence. 562 So.2d 536
(1989). We granted certiorari to consider whether the trial court erred in ruling that evidence of the refusal of Hanks's father to allow a drug screen and blood alcohol test to be performed on Hanks was relevant *Page 542 
and admissible against Hanks — in other words, whether the evidence that the father refused to allow Hanks to be tested supports the same unfavorable inference that could be drawn if Hanks himself had refused to allow the tests.
In Hill v. State, 366 So.2d 318 (Ala. 1979), a divided Court held that the fact that a defendant refused a blood alcohol test could be introduced at trial. We held that it was "relevant" on the issue of whether he was intoxicated, and that he could explain to the jury why he refused, if his refusal was for a reason other than fear that he would fail, which is what made his refusal to undergo the test relevant. In Hill, we noted that "most of the decisions reaching a contrary result do so, in essence, on the premise that refusal [to allow such tests] may be dependent or conditioned upon reasons other than consciousness of guilt, and, therefore [that the refusal to allow the test] is not probative as to intoxication." 366 So.2d at 321.
However, this Court found such evidence probative:
 "We feel, however, that such evidence is probative and should be presented to the jury for their consideration rather than excluding it altogether. Any circumstances tending to show the refusal was conditioned upon factors other than consciousness of guilt may properly be considered by the jury in determining the weight to attach to the refusal."
Hill, 366 So.2d at 321. This Court also rejected the premise that the admission of such evidence violates the fifth amendment guarantee against self-incrimination, citingSchmerber v. California, 384 U.S. 757, 86 S.Ct. 1826,16 L.Ed.2d 908 (1966).
It is obvious that this Court conditioned the admission of the evidence of refusal upon the fact that the defendant could present to the jury his reasons for such a refusal. The jury could then weigh the circumstances tending to show that the refusal was conditioned upon factors other than consciousness of guilt. This Court never envisioned that a parent's refusal for a child to take a chemical test would support the same inference as that to be drawn from the refusal of the child himself.
Under our rules of evidence, Hanks was precluded from testifying as to the reasons his father, who was deceased at the date of trial, may have had for refusing to permit the testing. Thus, the jury was unable to weigh the factors surrounding the refusal.
The Alabama Chemical Test for Intoxication Act, § 32-5-190 et seq., creates an "implied consent" of drivers on the public highways of Alabama to a chemical test or tests of blood, breath, or urine. § 32-5-192. Section 32-5A-194(c), part of the "Alabama Rules of the Road," provides expressly for admission of evidence of a refusal to submit to a chemical test:
 "If a person under arrest refuses to submit to a chemical test under the provisions of § 32-5-192, evidence of refusal shall be admissible in any civil, criminal, or quasi-criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of alcohol or controlled substance." (Emphasis added.)
It is equally obvious that the evidence of refusal shall be admissible in a criminal action only when the refusal is given by the person under arrest. This statute does not envision that a parent's refusal for a child to submit to a chemical test (or any party's refusal on another's behalf) shall be given the same inference as that of the person under arrest.
The Alabama Court of Criminal Appeals did not citeHill or the Alabama Chemical Test for Intoxication Act in making its determination that the evidence of the father's refusal was admissible. It found that the test of relevancy for admission of evidence in Alabama is broad enough to admit such evidence, citing C. Gamble, McElroy's Alabama Evidence, § 21.01(1) (3d ed. 1977). It further found that the refusal was "in the nature of a tacit admission by the defendant" and was, therefore, admissible, citing McElroy's Alabama Evidence, § 193.01. We cannot agree as to either determination. (Regarding *Page 543 
"tacit admissions," see Ex parte Marek, 556 So.2d 375
(Ala. 1989).
The Court of Criminal Appeals erred in affirming the judgment of the trial court, which erred in overruling the objection to the evidence that the defendant's father had refused to allow chemical testing.
Accordingly, the judgment of the Court of Criminal Appeals is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.