[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
Bryan C. Rawls petitions this Court for a writ of mandamus directing the Baldwin Circuit Court to grant his motion to stay his divorce proceedings pending a resolution of criminal charges filed against him by his wife Teresa Lynn Rawls; Bryan argues that allowing the divorce proceedings to continue threatens hisFifth Amendment right against self-incrimination in the criminal proceedings.
 Facts and Procedural History
On August 31, 2004, Teresa sued Bryan for divorce. In her complaint, she alleged that Bryan had been physically and verbally abusive to her on several occasions during their marriage. Also, on August 31, 2004, Teresa filed a motion for a temporary restraining order; the motion also sought to retain possession of the marital home, and stated:
 "During the course of this marriage [Bryan] has been physically abusive to [Teresa] to-wit: leading to a conviction in the City of Orange Beach for domestic violence against him and he has also otherwise exhibited a pattern of being physically and mentally abusive to [Teresa].
 "[Bryan] is a habitual drunk and as such has mood swings of violence against [Teresa]. . . . [I]t is necessary that [Bryan] be restrained by this Court from hurting, harassing, threatening, intimidating, contacting in person, contacting by telephone, or having any contact *Page 377 
with [Teresa] until the final hearing before this Court."
(Teresa's reply brief, ex. 2.)
On October 27, 2004, Bryan was arrested after crashing his truck into the garage attached to the marital home, causing damage to the marital home and to Teresa's automobile, which was parked in the garage. (Teresa's brief at 1.) On that same day, Teresa filed a petition for protection from abuse against Bryan based on that incident and what she alleged were his continual stalking and harassment. The trial court entered a protective order, and on November 3, 2004, Bryan was arrested for violating the protective order after he had made several telephone calls to Teresa.
On December 16, 2004, Bryan was indicted for criminal mischief in the first degree, a violation of § 13A-7-21, Ala. Code 1975; criminal trespass in the first degree, a violation of § 13A-7-2, Ala. Code 1975; and stalking, a violation of §13A-6-90, Ala. Code 1975. The criminal-mischief and criminal-trespass charges stem from the October 27, 2004, incident; the stalking charge is apparently based on more than just this one incident. He was arrested for these charges on April 8, 2005.
The trial in the parties' divorce proceeding was eventually scheduled for April 15, 2005. On April 14, 2005,[1] Bryan filed a motion to stay the divorce proceedings asserting that a civil trial would violate his privilege against self-incrimination under the Fifth Amendment of the United States Constitution and Article I, § 6, Ala. Const. 1901, in any trial on the criminal charges. The trial judge "denied the request for a stay, holding that it would be `unconscionable' to stay the divorce proceedings until the criminal cases could be resolved." (Bryan's brief at 4.)
Bryan filed a petition for a writ of mandamus with the Court of Civil Appeals; that court denied his petition without an opinion. Ex parte Rawls (No. 2040634, June 21, 2005),945 So.2d 504 (Ala.Civ.App. 2005) (table). He then filed a petition for a writ of mandamus in this Court.
 Standard of Review "A writ of mandamus is an extraordinary remedy that is available when a trial court has exceeded its discretion. Ex parte Fidelity Bank, 893 So.2d 1116, 1119 (Ala. 2004). A writ of mandamus is `appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala. 2001)."
Ex parte Antonucci, 917 So.2d 825, 830 (Ala. 2005). "Mandamus will be granted only where an abuse of discretion is shown." Ex parte McMahan, 507 So.2d 492, 493 (Ala. 1987).
 Discussion
Bryan argues that his Fifth Amendment right against self-incrimination is threatened if the civil divorce proceeding goes forward, and that, therefore, the trial judge exceeded her discretion when she denied his motion to stay the civil proceedings. The Fifth Amendment to the United States Constitution provides, in pertinent *Page 378 
part, that a person shall not "be compelled in any criminal case to be a witness against himself."[2] This Court has held "that despite the difference in language the Alabama privilege against self-incrimination offers the same guarantee as that contained in the Federal Constitution." Hill v. State,366 So.2d 318, 322 (Ala. 1979). Neither party, however, addresses the issues in terms of Art. I, § 6; therefore, we confine our discussion to the Fifth Amendment right against self-incrimination.
This Court stated in Ex parte Baugh, 530 So.2d 238,241 (Ala. 1988):
 "Under the Fifth Amendment to the Constitution of the United States, `no person . . . shall be compelled in any criminal case to be a witness against himself.' The privilege against self-incrimination must be liberally construed in favor of the accused or the witness, Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and is applicable not only to federal proceedings but also to state proceedings, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). `The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection.' Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir. 1979), citing with approval Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924)."
The United States Constitution, however, does not mandate that under all circumstances the civil proceedings in which the privilege against self-incrimination is asserted be stayed; whether to stay those proceedings is within the trial court's discretion.
 "While the Constitution does not require a stay of civil proceedings pending the outcome of potential criminal proceedings, a court has the discretion to postpone civil discovery when `justice requires' that it do so `to protect a party or persons from annoyance, embarrassment, oppression, or undue burden or expense.' Rule 26(c), Ala. R. Civ. P."
Ex parte Coastal Training Inst., 583 So.2d 979, 980-81
(Ala. 1991).
In the present case, three issues must be addressed to determine if a stay in the civil divorce proceedings based onFifth Amendment concerns in a pending criminal action is warranted: (1) whether the civil proceeding and the criminal proceeding are parallel, see Ex parte Weems,711 So.2d 1011, 1013 (Ala. 1998); (2) whether the moving party'sFifth Amendment protection against self-incrimination will be threatened if the civil proceeding is not stayed, see Exparte Windom, 763 So.2d 946, 950 (Ala. 2000); and (3) whether the requirements of the balancing test set out in Exparte Baugh, 530 So.2d at 244, and Ex parteEbbers, 871 So.2d 776, 789 (Ala. 2003), are met.
I. Whether the civil proceeding and the criminal proceeding are parallel.
In Ex parte Weems, this Court held that the trial judge did not err in denying the motion to stay discovery in a civil action because the civil and criminal actions were not parallel proceedings. In Weems, the ex-wife hired a private investigator to determine if her telephone line had been tapped after she was awarded the marital home in the divorce settlement. While the investigator was on the property, the ex-husband came onto the property and shot the investigator in the arm; the investigator *Page 379 
then shot the ex-husband. The ex-husband was indicted for assault with intent to murder as a result of shooting the investigator. The ex-husband then sued his ex-wife, alleging negligent hiring and supervision of the private investigator. The trial court refused to grant the ex-husband a stay in his civil proceeding because it found that the criminal action involved a determination as to whether the ex-husband shot the investigator with intent to murder, while the civil action involved a determination as to whether the ex-wife was negligent in her hiring and supervising of the investigator. Because these were not parallel proceedings involving the same act, theWeems Court denied the ex-husband's petition for a writ of mandamus.
This Court has held that the moving party is entitled to the requested stay in the civil proceedings when the civil case and the criminal case have been parallel proceedings. In Exparte Oliver, 864 So.2d 1064 (Ala. 2003), the defendant, Oliver, moved for a stay of the civil action arising out of an automobile accident based on criminal charges arising from the accident. The trial court held that the motion for a stay was moot because no indictment had been issued against Oliver after three grand juries had convened and the plaintiffs had modified their discovery requests to protect Oliver against self-incrimination. Oliver filed a petition for a writ of mandamus in this Court. This Court held that Oliver failed to show that he had a clear legal right to the stay or that the trial court had an `imperative duty" to grant the relief requested. However, the Court noted that subsequent to the filing of the petition for a writ of mandamus, Oliver had been indicted by a grand jury. Although this Court denied the petition, it stated:
 "In light of the return of the indictment against Oliver and the need to guarantee Oliver's Fifth Amendment privilege, our caselaw, see Ex parte White, 551 So.2d 923 (Ala. 1989), and its progeny, requires that a stay of the civil proceedings be issued to guarantee Oliver's Fifth Amendment privilege. Oliver, however, has not presented this change in circumstance — the return of the indictment, which creates an imperative duty for the trial court to stay the civil proceedings — to the trial court. This Court will not direct a court to take some action it has not previously refused to take."
864 So.2d at 1067. See also Ex parte Coastal Training Inst,supra (writ issued to stay civil proceedings where the civil and criminal proceedings arose out of vocational school's mishandling of students' grant funds); and Ex parteWhite, 551 So.2d 923 (Ala. 1989) (writ issued to stay civil proceedings where the civil and criminal proceedings arose out of a collision in which the defendant drove his vehicle into the plaintiffs' house).
In McCarthy v. Arndstein, 266 U.S. 34, 40,45 S.Ct. 16, 69 L.Ed. 158 (1924), Justice Brandeis stated:
 "The government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant."
The Fifth Amendment privilege
 "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution *Page 380 
but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."
Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316,38 L.Ed.2d 274 (1973). The Fifth Amendment privilege can be raised "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v.United States, 406 U.S. 441, 444, 92 S.Ct. 1653,32 L.Ed.2d 212 (1972) (footnote omitted).
The party requesting a stay of the civil proceeding does not actually have to be indicted. Ex parte CoastalTraining, 583 So.2d at 981. "A party is entitled to assert the Fifth Amendment privilege against self-incrimination although no criminal charges have been instituted, and even where the risk of prosecution is remote, so long as the party reasonably apprehends a risk of self-incrimination. A party need not be indicted to properly claim the Fifth Amendment privilege." Ex parte Ebbers, 871 So.2d at 787. Seealso Ex parte Antonucci, 917 So.2d at 830 (chief executive officer of insolvent corporation was entitled to stay of civil action brought by the insolvent corporation where both the civil action and the criminal investigation focused on the same conduct).
Bryan is charged here with criminal mischief, criminal trespass, and stalking. The criminal-mischief and criminal-trespass charges stem from the incident on October 27, 2004, when he drove his truck into the garage and severely damaged the marital home and Teresa's car. This incident occurred after Teresa filed for divorce.
Teresa's attorney stated at the hearing on Bryan's motion to stay the divorce proceedings that if those proceedings went forward he would not ask Bryan any questions concerning incidents that occurred after Teresa had filed for divorce. Therefore, concerning the charges of criminal mischief and criminal trespass, there would be no overlap in the criminal and civil cases. The civil divorce proceeding and the criminal proceedings resulting from the criminal-mischief and criminal-trespass charges are thus not parallel proceedings.
However, the stalking charge presents a different situation. Section 13A-6-90, Ala. Code 1975, provides: "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking." A prosecutor must thus prove that a defendant repeatedly
followed or harassed the victim to sustain a conviction for stalking.
Bryan argues that because, in order to prove guilt of stalking, the State must prove repeated actions, the criminal proceeding involving the stalking charge and the divorce proceeding are parallel proceedings. This Court agrees. To prove the stalking charge, the prosecution will possibly need to avail itself of evidence of alleged incidents and alleged abuse by Bryan that occurred before Teresa filed for divorce. Because that criminal proceeding and the divorce proceeding have some overlapping acts, they must be considered parallel proceedings. Therefore, Bryan's motion for a stay cannot be denied on the grounds that these are not parallel proceedings.
The dissent argues that the criminal proceeding involving the stalking charge and the divorce proceeding may or may not be parallel. However, a divorce action *Page 381 
in which there are allegations of abuse, harassment, threats, and intimidation and a felony stalking charge could not be more parallel. As already mentioned, to prove Bryan was guilty of stalking Teresa, the State must prove that he was "intentionally and repeatedly follow[ing] or harass[ing]" her.
Although the State may be planning to introduce as evidence the event that occurred on October 27, 2004, to help prove the stalking charge, that single instance will not be enough to prove repeated actions by Bryan. The repeated actions the State will need to prove its stalking case are those that occurred throughout the marriage, the occasions of "physical and verbal abus[e]" on which Teresa based her complaint for divorce. (Teresa's brief, ex. B.)
Even if, as the dissent hypothesizes, the State planned to use only events occurring after Teresa filed for divorce to prove its stalking case, there is nothing barring the State, after the civil proceedings have begun, from using events that occurred before Teresa filed for divorce to prove that charge. Therefore, because we cannot base our decision on what the State may plan to do hypothetically, we conclude that based on the evidence needed to prove the stalking charge, these are parallel proceedings.
II. Whether Bryan's Fifth Amendment right against self-incrimination is threatened by the civil proceedings.
The second issue is whether Bryan's Fifth Amendment right against self-incrimination is threatened by the civil proceeding. In Ex parte Windom, supra. this Court held that the moving party's Fifth Amendment right was not threatened by a civil proceeding; therefore, the Court denied his petition for a writ of mandamus. In Windom, Windom, the moving party, was not the criminal defendant. It was Windom, however, who made the motion to stay the civil case pending the outcome of the criminal trial against the defendant. The trial court refused to grant Windom's motion for a stay. This Court held that Windom's Fifth Amendment right against self-incrimination was not implicated by the proceedings and denied his petition for a writ of mandamus.
To sustain a moving party's Fifth Amendment right against self-incrimination, "`it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" Baugh,530 So.2d at 241 (quoting Hoffman v. United States,341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)).
This Court has found a moving party's Fifth Amendment right against self-incrimination threatened by the discovery process in a civil proceeding. In Ex parte Coastal Training,supra, this Court discussed the differing nature of discovery in civil and criminal proceedings. The scope of civil discovery is broad, requiring almost complete disclosure; criminal discovery, on the other hand, is much more restricted. Allowing civil discovery to proceed while a criminal case is pending may allow the prosecution in the criminal case to use the broad scope of civil discovery to its advantage.Coastal Training.
This Court has also found that a moving party's Fifth Amendment right against self-incrimination is threatened when a court requires the party to participate in a deposition or a trial, allowing the party to remain quiet only for specific questions that may incriminate him or her. In Coastal Training, this Court discussed the dangers of allowing a defendant to remain *Page 382 
quiet only for specific questions, including the possibility of a criminal investigator's being "planted" at the deposition in the civil proceeding, the possibility that the defendant could reveal the weak points of the case to a prosecutor by what he or she refuses to answer, and the opportunity for a prosecutor to conduct a point-by-point review of the case to find a "`link in the chain of evidence'" that would lead to the defendant's conviction. 583 So.2d at 981 (quoting Hoffman v.United States, 341 U.S. at 486, 71 S.Ct. 814). Because of these dangers, it may be necessary to stay the civil proceedings in order for the defendant's Fifth Amendment rights to be protected.
Bryan argues that "the allegations of the criminal case are so interrelated with this civil case that [Bryan's] testimony will be akin to walking through a field of land mines — each question and answer a potential risk for use against him at a criminal proceeding." (Bryan's brief at 11.) Bryan argues that because of the overlap in the claims of abuse before the filing of the divorce complaint and the element of a pattern of threats or abuse the prosecutor must prove to prove the stalking charge, his Fifth Amendment rights are threatened by requiring him to continue with the divorce proceeding. We agree that because of the stalking charge (see Part I of this opinion), the dangers discussed in Coastal Training exist here if Bryan is required to continue with the civil divorce proceeding.
The dissent argues that because discovery in the divorce action is completed and Bryan has not had to answer an incriminating question,[3] Bryan is unable to argue that he will have to incriminate himself at the trial in the divorce action. This argument suggests that at the trial of the divorce action nothing will be asked of Bryan that was not asked during the discovery phase of the divorce proceeding. This, however, is unlikely. Thus, even if discovery has been completed and even if Bryan has not yet been asked an incriminating question, because of the overlap in these proceedings, he will likely be asked at trial questions that would cause him to incriminate himself. HisFifth Amendment right is clearly threatened.
The dissent also argues that the language previously quoted from Coastal Training, 583 So.2d at 981, is not a valid statement of the law. This Court stated in CoastalTraining:
 "`The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in a criminal case.' Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir.1987). In Afro-Lecon, the court pointed out some of the dangers presented by this situation:
 "`Such unconstitutional uses may begin with the surreptitious planting of criminal investigators in civil depositions . . . and end with passive abuses, such as when the civil party, who asserts *Page 383 fifth amendment rights, is compelled to refuse to answer questions individually, revealing his weak points to the criminal prosecutor. This point-by-point review of the civil case may lead to a "link in the chain of evidence" that unconstitutionally contributes to the defendant's conviction. Hoffman v. United States, 341 U.S. 479, 486 [71 S.Ct. 814, 818, 95 L.Ed. 1118] (1951).'"
It may be "unclear" to the author of the dissent why this Court in Coastal Training adopted the language fromAfro-Lecon, Inc. v. United States, 820 F.2d 1198
(Fed. Cir.1987), a federal Court of Appeals case. 953 So.2d at 391. However, this Court has reaffirmed CoastalTraining's adoption of the federal circuit's approach as the law in Alabama on four other occasions.
In Ex parte Ebbers, supra, this Court created an exhaustive list of 13 principles that have emerged from Alabama caselaw concerning the stay of a civil proceeding pending the outcome of a criminal case. One of those principles (no. 11) states:
 "A civil party's Fifth Amendment right against self-incrimination cannot be adequately protected by requiring him simply to assert his right to remain silent when asked specific questions during a civil deposition; such an approach construes the Fifth Amendment too narrowly. The dangers in such an approach have been identified as including the possibility of a criminal investigator's being `planted' at the deposition, the revealing by the deponent of his weak points by his selection of which questions he refuses to answer, and the opportunity presented to a prosecutor of deriving, by a point-by-point review of the civil case, a `link in the chain of evidence' that would unconstitutionally contribute to the defendant's conviction in the criminal case."
871 So.2d at 788.
Likewise, in Ex parte Williams, 775 So.2d 146, 148
(Ala. 2000), Ex parte Price, 707 So.2d 1105, 1107
(Ala. 1997), and Ex parte Hill, 674 So.2d 530, 534
(Ala. 1996), this Court also discussed the dangers of requiring a party to continue with a civil trial while criminal charges were pending against the party. In Williams andPrice the Court held that these dangers mandated a stay in the civil proceedings in those cases. If, as the dissent claims, this Court was wrong in its analysis in CoastalTraining, then Ebbers, Williams, Price, andHill must have also been "incorrect statement[s] of the law." 953 So.2d at 391.
Ironically, the dissent quotes Afro-Lecon, the case decided by the federal Court of Appeals, with which the dissent so strongly disagrees, in support of a proposition in its opinion. 953 So.2d at 389. Furthermore, some of the language this Court quoted in Coastal Training fromAfro-Lecon was in turn taken from Hoffman v.United States, a United States Supreme Court case. InHoffman, the United States Supreme Court stated: "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link inthe chain of evidence needed to prosecute the claimant for afederal crime." 341 U.S. at 486, 71 S.Ct. 814 (emphasis added).
The dissent also discusses the "compelled to refuse to answer" language from Afro-Lecon and simply discounts it as being contradictory in terms. 953 So.2d at 391. However, this phrase, when read in the context of the language inAfro-Lecon, is not as confusing as the dissent makes it out to be. The phrase simply refers to a party's being forced to participate in a civil *Page 384 
proceeding and being allowed to plead the Fifth Amendment in response to certain questions; therefore, the party is being compelled to refuse to answer. This is exactly the situation in which Bryan would be placed were the stay to be denied. This is precisely the situation in which all the dangers discussed previously may arise.
In addition, the dissent cites Baxter v. Palmigiano,425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), for the proposition that the Fifth Amendment "does not protect the witness from being asked the questions in the first place, or (in a civil action) from the consequences of a refusal to answer." 953 So.2d at 391. However, Baxter is concerned with the type of inferences that can be drawn from a party's invocation of the Fifth Amendment, not whether the party should be awarded a stay in a parallel civil proceeding. Furthermore, one of the statements the dissent quotes from Baxter is "`the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" 953 So.2d at 391. Neither this quotation nor the entire United States Supreme Court opinion in Baxter stands for the proposition that the dissent cites it for — that the Fifth Amendment "does not protect the witness from being asked the questions in the first place." 953 So.2d at 391.
Further, the quotation in the dissent from Williams v.Florida, 399 U.S. 78, 84, 90 S.Ct. 1893, 26 L.Ed.2d 446
(1970), is also inapposite. In Williams, the defendant argued that he was being forced to violate his Fifth Amendment protection by being required to provide the name and address of the person he claimed was his alibi, thus allowing the State to depose the alibi witness. The Court in Williams stated:
 "The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the Defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."
399 U.S. at 83-84, 90 S.Ct. 1893 (portion quoted in the dissent emphasized). Thus, other than dealing with the broad concept of the privilege against self-incrimination, this quotation has no bearing on the issue involved in this case.
If this Court were to deny Bryan's petition and require the civil divorce proceedings to continue, allowing Bryan to invoke his Fifth Amendment privilege and refuse to answer certain questions that he deems are incriminating, Bryan will be subjected to all of the dangers of self-incrimination that are discussed in the cases mentioned earlier. Therefore, it is the opinion of this Court that Bryan's Fifth Amendment right against self-incrimination in the criminal case against him is threatened by the civil action against him.
III. Whether the balancing test weighs in favor of Bryan.
The third issue is whether the balancing test of Ex parteBaugh, 530 So.2d at 243-44, weighs in favor of Bryan, as the party moving for the stay. To justify a stay of a civil proceeding pending resolution of a criminal proceeding, theFifth Amendment right of the party requesting the stay must outweigh the potential *Page 385 
prejudice to the other party of granting the stay.
This Court first used the balancing test in Ex parteBaugh. This Court, in deciding whether to grant Baugh's petition for a writ of mandamus, applied the balancing test articulated in Afro-Lecon, 820 F.2d at 1202. The Court balanced two interests — Baugh's interest in postponement of the civil case, on the one hand, and the possible prejudice that might result to the party opposing the motion in delaying the civil case, on the other — and granted Baugh's petition.
More recently, this Court in Ex parte Ebbers, supra, elaborated on that balancing test. In Ebbers, this Court undertook to catalogue a list of factors identified in federal cases as factors that might be considered in applying the balancing test. The factors included, but are not limited to:
 "1. The interest of the plaintiff in proceeding expeditiously with the civil litigation, or any particular aspect of it, and the potential prejudice to the plaintiff of a delay in the progress of that litigation.
 "2. The private interest of the defendant and the burden that any particular aspect of the proceedings may impose on the defendant.
 "3. The extent to which the defendant's Fifth Amendment rights are implicated/the extent to which the issues in the criminal case overlap those in the civil case.
 "4. The convenience of the court in the management of its cases, and the efficient use of judicial resources.
 "5. The interest of persons not parties to the civil litigation.
 "6. The interest of the public in the pending civil and criminal litigation.
 "7. The status of the criminal case, including whether the party moving for the stay has been indicted. . . .
 "8. The timing of the motion to stay."
871 So.2d at 789-90 (citations to federal cases omitted). After weighing these factors, this Court granted the petition for the writ of mandamus in Ebbers.
The parties in this case argued the applicability of some of the factors in Ebbers, and some of those factors are relevant to our analysis. Bryan argues that his Fifth Amendment right against self-incrimination outweighs Teresa's interest in finalizing their divorce (factor 1). In looking at this factor, the Court should consider the potential prejudice that may result to Teresa as a result of a stay in the divorce proceeding. According to decisions of this Court, the important aspect of this factor is whether Teresa's civil action against Bryan will be damaged by the stay; in other words, will her case against Bryan be weakened by the passage of time because of lost evidence or witnesses? See Ex parte Antonucci,917 So.2d at 831. In her brief, Teresa does not argue that her case will be prejudiced by a stay. She has presented no evidence indicating, and she has not argued, that her case will be prejudiced or that there is a threat that she will lose evidence or witnesses if the stay is granted.
Teresa argues that she "is attempting to move on with her life after years of abuse. Allowing [Bryan] to stay the divorce would literally be adding insult to injury and allowing him to continue to abuse [Teresa] now with the legal system instead of his hands." (Teresa's brief at 12.) Although this Court acknowledges Teresa's difficult situation, her interest must be weighed against Bryan's Fifth Amendment right. Although Teresa has a strong interest in the completion of the divorce proceedings, *Page 386 
because there is no evidence indicating that her case will be at all prejudiced or damaged by the issuance of a stay, Bryan'sFifth Amendment right must prevail over her interest,
The parties also discussed the efficiency of judicial resources (factor 4). Ebbers, 871 So.2d at 790. Teresa argues:
 "The [divorce] case has been continued from the original trial setting of November 9, 2004 to-date based on the actions of [Bryan]. (Exhibit `A'). This case has continued to occupy space on the divorce docket of the trial court and has encumbered judicial economy, wasted resources and continues to do so."
(Teresa's brief at 15.) Although the efficient use of judicial resources is an important factor, this Court in Ex parteWhite, 551 So.2d at 924, stated: "[W]hen state concerns for judicial economy conflict with federal constitutional rights, the state concerns must give way. Otherwise, individuals would be forced to choose between a constitutional right and a potential loss in a state matter. Such a choice turns a right into an option." Bryan's Fifth Amendment right against self-incrimination outweighs the State's interest in efficient use of judicial resources.
Finally, Teresa argues that "the timing of this Motion to Stay is merely reflective of the continuing abuse by [Bryan]. [Bryan] filed this Motion to Stay the day before his trial in an effort to delay and harass [Teresa] even further." (Teresa's brief at 15.) Teresa never argues that Bryan should be considered to have waived his Fifth Amendment right; she never argues, as the respondent did in Ex parte White, that Bryan did anything that might constitute a waiver. See Exparte White, 551 So.2d at 924 (respondent argued to no avail that the petitioner had waived the right against self-incrimination by failing to respond or object to interrogatories in a timely manner). As stated earlier, Bryan's request for a stay was filed only six days after his arrest on the criminal charges. Teresa's argument that the timing of Bryan's request for a stay was less than ideal, while understandable, does not give this Court cause to favor her interests above Bryan's Fifth Amendment right.
The dissent attempts to paint this balancing test as weighing Teresa's interest in the finality of the divorce proceedings against Bryan's interest in the divorce proceeding. However, the balancing test actually weighs Bryan's Fifth Amendment protection against Teresa's interest in a quick resolution of the divorce proceeding. For the reasons stated, Bryan'sFifth Amendment right against self-incrimination outweighs the other factors to be considered in the balancing test, including any potential prejudice to Teresa. Therefore, because the divorce proceedings and the State's criminal proceeding based on the stalking charge are parallel proceedings that threaten Bryan'sFifth Amendment right, the trial court erred in denying his motion for a stay in the divorce proceedings.
It is important to note, however, that the "trial court is not precluded from subsequently entertaining a motion to dissolve the stay, if circumstances have changed in the interim in such a way as to render the stay no longer appropriate."Ebbers, 871 So.2d at 788-89. Further, even though Teresa cannot obtain complete relief until the stalking charge, the only parallel criminal proceeding, against Bryan is adjudicated, we note that the trial court may allow Teresa an interlocutory order granting a divorce, reserving the division of assets until after the conclusion of Bryan's criminal proceedings. This would allow the trial court to hold the proceedings necessary to dissolve the marriage and also would allow Teresa to return to using her former *Page 387 
name. In accordance with the above, the trial court would be able to hear testimony as to the ground of incompatibility alleged in Teresa's complaint even though the trial court would be prohibited from hearing any evidence that may be relevant to a stalking charge. The trial court could then specifically reserve the remaining issues, including the division of marital assets, until after the criminal proceedings have been completed. It should be further noted that neither party would be able to remarry until 60 days after the final judgment of divorce is entered. See Ala. Code 1975, § 30-2-10.
 Conclusion
The civil divorce proceeding and the criminal proceeding based on the stalking charge are parallel proceedings, and Bryan'sFifth Amendment protection against self-incrimination in the criminal proceeding is threatened if the divorce proceeding is not stayed. Moreover, Bryan's Fifth Amendment protection outweighs Teresa's interest in a speedy divorce. Therefore, applying the standard of review appropriate in a mandamus proceeding, we believe the trial court exceeded its discretion in denying Bryan's request for a stay of the civil action pending resolution of the criminal charges against him; the petition is granted and the trial court is ordered to stay the civil divorce proceedings until the stalking charge against Bryan is adjudicated at the trial level.
PETITION GRANTED; WRIT ISSUED.
LYONS, HARWOOD, and PARKER, JJ., concur.
SEE, J., concurs in Parts I and II and concurs in the result as to Part III.
WOODALL, STUART, and SMITH, JJ., concur in the result.
NABERS, C.J., dissents.
[1] The dissert emphasizes that Bryan did not move for a slay of the divorce proceeding until the day' before trial in the divorce proceeding was scheduled to begin. However, the dissent fails to acknowledge that Bryan was not arrested on the criminal charges until one week before the trial date. Therefore, he had a valid reason for not moving for the stay until the day before the proceedings were scheduled to begin.
[2] Article I, § 6, Ala. Const. 1901, provides: "That in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself. . . ."
[3] On this petition for the writ of mandamus, this Court has no record before it of whether discovery has been completed. We assume that the dissent makes the statement that "[d]iscovery has long been complete," 953 So.2d at 391, because the trial in the case was set to begin the day after Bryan requested the stay. However, nothing before us confirms that assumption. Likewise, this Court has nothing before it stating that Bryan has not had to answer an incriminating question. During discovery, Bryan may have answered incriminating questions. Because he had not been indicted when discovery was conducted, he may have been unaware of the incriminating nature of his answers. The dissent assumes facts of which this Court has no knowledge.