HARWOOD, Justice.[1]
This mandamus proceeding involves the proper balancing between the privacy interest of the defendant in the underlying civil action, which has become implicated as hereinafter explained, and the interest of the plaintiff in conducting an informed voir dire of the jury venire. In order to honor, at this level, the privacy interest at issue, this Court has granted the motion of the remaining defendant below, the petitioner for the writ of mandamus in this Court, for anonymity in the styling of this opinion.
*1144 C.D., as executrix of the estate of E.F., deceased, sued A.B. and others in the Coffee Circuit Court alleging that medical malpractice on the part of the defendants resulted in the death of E.F. A.B. is a medical provider residing and practicing in Coffee County. C.D. has settled with all of the other defendants in the case; the case continues with A.B. as the sole defendant.
C.D. took A.B.’s deposition in connection with the case and inquired during the course of the deposition as to the name of the father of A.B.’s minor child. A.B. declined to answer that question on the basis that it represented private information. Although the contents of the parties’ filings with this Court and the copies of the parts of the record they chose to attach for consideration by this Court (see Rule 21, Ala. R.App. P.) do not reveal what further explanation A.B. might have provided in that regard at the deposition, C.D. followed up her deposition inquiry by serving on A.B. an interrogatory asking: “What is the name and address of the father of your child?” After A.B. resisted disclosure of that information, C.D. moved the Coffee Circuit Court to compel A.B. to answer the interrogatory. Over the course of the ensuing procedural developments, C.D. explained why she desired the information, and A.B. explained, in affidavit form, the special circumstances of her child’s paternity.
A.B. attested under oath that she had never told anyone the name of the man who was the father of her child; that no documentation, official or otherwise, existed of his name in that regard; and that the father’s name was not recorded on the child’s birth certificate. She swore further that not only was he not a resident of the Enterprise division of Coffee County, but he was also not a resident of the State of Alabama, had no relatives by blood or
marriage in Coffee County other than A.B.’s child and, to the best of A.B.’s knowledge, had never worked in Coffee County. She further asserted under oath that “[t]he gentlemen and I have agreed that neither of us would divulge his identity. He and I have made a conscious decision to keep this information confidential and absolutely secret.” She explained that she did not wish the identity of the father to become known “because of the potential effects on my child, on myself, and my family.” In her filings with the trial court, C.D. acknowledged that “[t]he identity of the father of [A.B.’s] child is not being sought for discovery of admissible evidence .... ” but was being sought solely to use during voir dire of the jury venire.
In C.D.’s response in opposition to AB.’s petition for the writ of mandamus in this Court, she asserts that she seeks “to obtain discovery of the identity and address of the father of A.B.’s out-of-wedlock child,” in order to protect what she says is her right to a fair and impartial trial guaranteed by Art. I, § 6, Ala. Const, of 1901, and her right to challenge for cause any jurors related to A.B. within the degrees of consanguinity or affinity proscribed by § 12-16-150(4), Ala.Code 1975. That Code subsection provides:
“It is good ground for challenge of a juror by either party:
[[Image here]]
“(4) That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, computed according to the rules of the civil law, either with the defendant or with the prosecutor or the person alleged to be injured.”
Thus, the situation is that A.B., having made the decision to forgo both an abortion and putting her child up for adoption, and having committed with the father that his identity would be kept secret, wishes to *1145 preserve that secret intact, yet C.D. contends that she is entitled to have the secret revealed for her use during voir dire inquiry.
On November 17, 2005, the trial judge ordered A.B. to answer the interrogatory and provide the court with the name and address of the father of her child. The judge attempted to put in place partial safeguards surrounding the disclosure, ordering that A.B. might “provide the response under seal to the court and submit a Proposed Protective Order for consultation by the court, prior to information being provided to [C.D.],’’ and enjoining and restraining C.D. from “using the name and address of the subject individual to harass or embarrass [A.B.],” allowing C.D. to use the information only in qualifying a jury.
A.B. moved for reconsideration of that order, arguing that there could be “no half-way on the confidentiality of this information,” because it either would be known by no one else or it would be known by someone else who, in turn, could tell someone else and the use of the name during voir dire would mean that it was no longer secret. A.B. argued to the trial court that the United States Supreme Court has specifically recognized that “marriage” and “sexual” concerns are fundamental rights, entitled to privacy protection, and she cited this Court’s opinion in Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983). C.D. responded by pointing out that the trial court had already indicated that it would provide the name and address of the father “in the appropriate form and fashion for [C.D.] to utilize in the voir dire process,” and argued that the trial court could “handle soliciting information as to any connection anyone on the venire may have to the father in such a way as not to cause undue concerns to this child.”
On January 9, 2006, the trial judge denied A.B.’s motion for reconsideration and directed that she appear in court at 9:00 a.m. on February 6, 2006, to show cause why she should not be held in contempt for having failed to comply with the court’s previous order compelling her to respond to the discovery request. A.B. then petitioned this Court for a writ of mandamus directing the trial court not to require her to disclose the name of her child’s father. We ordered answer and briefs pursuant to Rule 21(b), Ala. R.App. P., and we now proceed to address the merits of the petition.[2]
In Phillips, supra, we pointed out:
“The United States Supreme Court has specifically recognized ‘marriage’ and ‘sexual’ concerns as fundamental rights, entitled to privacy protection. Eisenstadt, Sheriff v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).”
435 So.2d at 708.
In Phillips, this Court expressly affirmed that Alabama recognizes a civil cause of action for “invasion of privacy” when one wrongfully intrudes, among other things, into the private affairs and concerns of another. We noted with approval the statement in Comment (c) to § 652B Restatement (Second) of Torts (1977) that an individual might be deemed to have invaded the privacy of another individual by invading “ ‘a private seclusion that the plaintiff has thrown about his person or affairs. ’ (Emphasis added [in Phillips ].)” 435 So.2d at 711. We likewise noted with *1146 approval the statement in Comment (c) that a wrongful-intrusion privacy violation “can occur in a public place, where the matter intruded upon is of a sufficiently personal nature....” 435 So.2d at 711. We do not quote these propositions to suggest that C.D.’s proper discovery efforts, and the resulting court orders, represent an invasion of privacy; rather, we simply note the sentiments expressed in order further to acknowledge the legitimacy of A.B.’s privacy concerns.
Certainly, not every trial-court ruling on a discovery dispute entitles the aggrieved party to mandamus review by an appellate court.
“ ‘[0]ur judicial system cannot afford immediate mandamus review of every discovery order.’ Ex parte Ocwen Fed. Bank, 872 So.2d 810, 813 (Ala.2003). When a petitioner seeks mandamus review of a discovery order, this Court will grant the review only after making two determinations. First, because discovery matters are within a trial court’s sound discretion, we must determine that the trial court in issuing the discovery order clearly exceeded its discretion. Second, we must ensure that the petitioner does not have an adequate remedy by appeal. 872 So.2d at 813.
“ ‘In certain exceptional cases ... review by appeal of a discovery order may be inadequate.’ 872 So.2d at 813. The four most common examples of cases in which review by appeal may be inadequate, although the list is not exhaustive, are
“ ‘(a) when a privilege is disregarded ...; (b) when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the re-
questing party ...; (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error.’
“Ocwen, 872 So.2d at 813-14.”
Ex parte Crawford Broad. Co., 904 So.2d 221, 224 (Ala.2004).
Although A.B.’s right to maintain the secret of the identity of her child’s father arguably rises to a level of privilege, we need not, and do not, decide that issue. It is sufficient that we find that this information is patently irrelevant under the applicable scope of permissible discovery, and, employing the balancing test prescribed by Ex parte Ocwen Federal Bank, 872 So.2d 810 (Ala.2003), for that circumstance, we find that compelled discovery of the father’s identity would clearly constitute harassment or impose a burden on A.B. far out of proportion to any benefit that may obtain to C.D.
“Evidence that is not relevant is not discoverable.
“ ‘Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.’ *1147 “Rule 26(b)(1), Ala. R. Civ. P. Rule 401, Ala. R. Evid., states that ‘ “[rjelevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’ ”
Ex parte Crawford Broad. Co., 904 So.2d at 224-25.
C.D. argues in her brief to this Court that the identity of the father of A.B.’s child “is certainly ‘relevant to the subject matter involved in the pending action,’ Rule 26(b)(1), Ala. R. Civ. P. (emphasis added), because a critical part of the ‘subject matter’ of any ‘pending’ jury trial is going to be the nature of the evidence available to the parties during voir dire.” She elaborates that “nothing could be more ‘relevant’ to C.D.’s case than insuring a jury untainted by the inclusion of A.B.’s relatives; this is one of C.D.’s statutory and constitutional rights and privileges,” citing § 12-16-150, Ala.Code 1975, and Art. I, § 6, Ala. Const, of 1901, as interpreted in Ex parte Vaughn, 395 So.2d 95 (Ala.1979).
We disagree that the father’s identity is relevant. As noted, § 12-16-150(4) concerns only relationships by either consanguinity or affinity between a juror and, as applicable to this ease, A.B. There is neither a blood relationship nor a marriage between A.B. and the- father of her child, with the result that no juror could be “connected [with A.B.] by consanguinity [or] ... by affinity” through a kinship between the juror and the father of A.B.’s child. “ ‘ “Affinity properly means the tie which arises from marriage betwixt the husband and the blood relatives of the wife, and between the wife and blood relatives of the husband.” ’ ” Norris v. Presley, 292 Ala. 155, 157, 290 So.2d 643, 645 (1974) (quoting Duke v. State, 257 Ala. 339, 344, 58 So.2d 764, 768 (1952)). ' “Consanguinity measures the relationship by blood and affinity measures the relationship by marriage.” General Motors Corp. v. Jernigan, 883 So.2d 646, 670 n. 20 (Ala.2003). Any connection a juror might have with A.B. by consanguinity would have to exist totally independent of A.B.’s relationship with the father of her child; the fact that she and the father had a relationship in the past does not mean that they are “relatives” of each other.
Ex parte Vaughn, relied on by C.D., did indeed conclude that § 12-16-150(4) represents “an implementation of the fair and impartial trial guarantee of Art. I, Sec. 6, of our State Constitution,” 395 So.2d at 96, as that constitutional provision relates to a relationship between a juror and the victim in a criminal case, but that provision of the Alabama Constitution explicitly applies only to criminal prosecutions. Moreover, as the Court of Criminal Appeals explained in Vaughn v. State, 395 So.2d 97, 102 (Ala.Crim.App.1980), following this Court’s remand in Ex parte Vaughn: “[T]he rationale of permitting a challenge for cause of a juror who is related to a party, or to an injured or deceased victim of an alleged crime, is to be found solely in the fact that if and when, but only if and when, the juror is aware of the relationship there-is some danger of bias by reason of the relationship.”
As we did in Crawford Broadcasting Co., we conclude that, under the peculiar circumstances of this case, the information C.D. seeks from A.B. involves “a highly sensitive subject” and “when ‘patently irrelevant,’ is such a personal and private matter that compelling its production would clearly constitute harassment.” 904 So.2d at 226. Given the alternative solutions available, disclosure would impose a burden on A.B. far out of proportion to any benefit that might obtain to C.D.
*1148 We appreciate that during the course of discovery parties often inquire concerning another party’s family members and that such usually innocuous information is routinely provided without objection even though not “relevant” under Rule 26, Ala. R. Civ. P. We are here simply dealing with a situation where discovery of the identity of an individual who is not a family member of a party is opposed as irrelevant under Rule 26 and that information is far from innocuous. We also recognize that information concerning the blood relatives of and those in close affinity with a party to a civil action may properly be ordered to be disclosed as a part of a pretrial order issued pursuant to Rule 16, Ala. R. Civ. P., but that is not the procedural posture in which the issue here comes to us.
A.B. would not have an adequate remedy by appeal of the trial court’s order following the conclusion of the trial. As we noted in Ex parte Miltope Corp., 823 So.2d 640, 645 (Ala.2001), once information has become available through the discovery process, a subsequent successful appeal cannot restore the valuable secretive nature of the information. Moreover, as also noted in Miltope Corp., there may be no sanctions sufficient to protect A.B. in the event C.D. should fail to abide by the terms of any protective order, nor may there be a reliable means of monitoring what C.D. might do with the information. In other words, there would be no way “to put the genie back in the bottle.” By so noting, we, of course, do not intend to impugn C.D.’s reliability or her integrity, and we intend no personal slight to her whatsoever; we simply have to take into account the fallibility of human beings in general and recognize that once secret information is no longer secret, there is no way to ensure the boundaries of further disclosure.
We appreciate that the trial judge sought partially to preserve A.B.’s right of privacy as to the information sought, but we conclude that the safeguards he proposed did not go far enough and would unavoidably unravel the cloak of absolute secrecy A.B. and the father of her child have so scrupulously maintained. Under the arrangement envisioned by the trial court’s order, the name and address of the father of A.B.’s child would necessarily become known to the judge himself; to C.D., a party adverse to A.B. who has been unwilling to accept A.B.’s sworn statements; to C.D.’s attorneys; to the attorneys representing A.B. in the medical-malpractice action (she is represented by separate counsel in this mandamus proceeding); and, potentially, to court personnel present in the courtroom when the name of the father is announced as a part of the voir dire without identifying him as the father of A.B.’s child. Personnel in the circuit clerk’s office would have been privy to the numerous court filings concerning the issue of the father’s identity, extending over a lengthy period and might well “make the connection” if present in the courtroom when the father’s name is announced as part of the voir dire.
Because there are alternative approaches the trial court could employ that would fully protect C.D.’s right to a jury “untainted” by relatives of A.B. or her child while at the same time fully protecting the privacy rights of A.B. and her child, we deem it appropriate to grant the petition. For example, the trial court could identify A.B. to the venire during the voir dire, name her child and any other relatives of A.B. by blood or marriage, and then simply ask if any member of the venire was related to any of them by either blood or marriage or .knew anyone who was so related to any of them. A juror somehow acquainted with A.B. or her child but unaware of the paternity of the *1149 father of the child would not be prejudiced for or against A.B. as a result of any acquaintanceship or relationship with the father. Vaughn v. State, supra.
Accordingly, we grant A.B.’s petition for the writ of mandamus and direct the trial court to vacate its order requiring A.B. to answer C.D.’s interrogatory calling for the disclosure of the name and address of the father of A.B.’s child.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, WOODALL, and STUART, JJ., concur.
SMITH and BOLIN, JJ., concur in the result.
PARKER, J., dissents.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Harwood on June 21, 2006.

. We have previously granted A.B.’s motion for a stay of proceedings in the trial court pending consideration of her petition, and we have also denied C.D.’s motion to dismiss A.B.'s petition as untimely.