Stanley Edward Dinkel petitions this Court for a writ of mandamus directing the trial court to enter a protective order to prevent Dinkel's being deposed in a civil case against him until the criminal charges pending against him are resolved.
 Facts and Procedural History
In March 2005, Stanley Dinkel and Amy Patterson were involved in an automobile accident at an intersection in Cullman County. Patterson's daughter Morgan Pitts was a passenger in Patterson's car at the time of the accident. In August 2005, Patterson and Pitts (hereinafter collectively "Patterson") sued Dinkel, GEICO Insurance Company, and fictitiously named parties, alleging negligence and wantonness, a claim for uninsured/underinsured-motorist benefits, negligent entrustment, negligent supervision, and violation of the Dram Shop Act and asserting claims under the Alabama Extended Manufacturer's Liability Doctrine and a theory of "crashworthiness." Patterson alleged that Dinkel, who was 19 years old at the time of the accident, was under the influence of alcohol at the time of the accident. Dinkel denied the material allegations of Patterson's complaint. After Patterson sued him, Dinkel was arrested and charged with assault as a result of the accident.
In September 2005, Patterson's attorney, Gaynor St. John, inquired as to dates Dinkel would be available for deposition. Dinkel's attorney, Ruth Ann Hall, responded that she was "swamped through the end of October" but that she hoped to work out a convenient date within the next couple of days. St. John e-mailed Hall a couple of weeks later and asked if Hall had any dates in November available for the deposition. Hall responded that she would "get back with" St. John. In November, St. John sent Hall another letter stating that she had not heard from Hall regarding an available date and that she had issued a notice to depose Dinkel on December 5, 2005. Hall responded that she would be in trial on December 5 and that the first available date she could attend the deposition would be January 30, 2006. St. John canceled the December 5 deposition and rescheduled it for January 30, 2006. However, Hall also canceled the January 30 deposition because of a scheduling conflict. Dinkel's deposition was rescheduled for March 17, 2006. St. John also subpoenaed two nonparties, Gregg Jackson and Coralie Jackson, to appear for depositions on March 17.
On March 8, 2006, Hall wrote St. John a letter in which she raised for the first time the fact that Dinkel faces unresolved criminal charges based on the events surrounding the accident. Hall said that, because *Page 1132 
of the pending assault charges against Dinkel, she could not allow St. John to depose Dinkel at that time. She also said that she could not attend the Jacksons' depositions on March 17 because she would be attending depositions for a case pending in a federal court. Finally, Hall asked whether Patterson would be interested in mediating the claim. She said, however, that the pending criminal charges against Dinkel might "hinder" any such mediation.
St. John sent Hall a letter confirming the rescheduled depositions of Patterson, Dinkel, and the Jacksons, which were set for April 17, 2006. St. John again subpoenaed the Jacksons to appear for depositions on April 17. However, Hall again canceled the depositions. By letter, St. John asked for the next available date to reschedule them and noted that Dinkel's responses to interrogatories and document requests were due on April 16. Dinkel served objections to the interrogatories and document requests on April 17. On April 20, Patterson moved the trial court to compel Dinkel's deposition, and the trial court granted the motion. Dinkel responded by filing a motion for reconsideration of the motion to compel and for a protective order.
On April 26, Hall and St. John conferred and rescheduled the depositions for May 5. Upon returning to her office after the conference, Hall sent St. John a letter that addressed the motion to compel. Specifically, Hall said,
 "I trust that as we have the depositions scheduled for Friday, May 5, this takes care of your issues regarding the depositions. . . . Finally, by copy of this letter to Judge Hardeman, I am informing him of what is hopefully the resolution of the discovery issues in this case."
On May 4, the trial court entered an order denying the motion for a protective order and canceling a hearing on the motion for reconsideration because the issue was moot.
On May 4, before any depositions were taken, Dinkel petitioned this Court for the writ of mandamus directing the trial court to vacate the order denying Dinkel's motion for a protective order and to stay Dinkel's deposition pending disposition of the criminal charges against him. He also filed a motion in this Court to stay the proceeding pending a ruling by this Court on his mandamus petition. This Court ordered answer and briefs and stayed the proceeding in the trial court pending resolution of this petition for the writ of mandamus.
 Standard of Review
It is well-settled that mandamus is an extraordinary writ, requiring a showing that there is "`(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'" Morrison Rests., Inc.v. Homestead Village of Fairhope, Ltd., 710 So.2d 905, 907
(Ala. 1998) (quoting Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991)).
As we stated in Ex parte A.B., 950 So.2d 1142, 1146
(Ala. 2006), "not every trial court ruling on a discovery dispute entitles the aggrieved party to mandamus review by an appellate court." When reviewing a discovery order, this Court will issue the writ of mandamus only after making two determinations:
 "`First, because discovery matters are within a trial court's sound discretion, we must determine that the trial court in issuing the discovery order clearly exceeded its discretion. Second, we must ensure that the petitioner does not have an adequate remedy by appeal.'" *Page 1133 
950 So.2d at 1146 (quoting Ex parte Crawford Broad.Co., 904 So.2d 221, 224 (Ala. 2004)).
 Analysis
Dinkel argues that without a protective order he will be forced to sit for a deposition that will threaten his Fifth Amendment right not to incriminate himself. We recently discussed a similar issue in Ex parte Rawls, 953 So.2d 374 (Ala. 2006). In that case, Bryan Rawls petitioned this Court for a writ of mandamus directing the trial court to stay his divorce proceeding pending resolution of the criminal charges against him. The criminal charges arose from an incident that occurred after his wife, Teresa, filed for a divorce, when he drove his car into their garage, damaging Teresa's car and the marital residence. This Court considered three issues when deciding whether to issue the writ of mandamus and stay the divorce proceeding: (1) whether the civil and criminal proceedings were parallel; (2) whether Rawls's Fifth Amendment protection against self-incrimination was threatened by his testifying in the divorce proceeding; and (3) whether the requirements of the balancing test established in Ex parte Baugh,530 So.2d 238, 244 (Ala. 1988), were met. We answered all three inquiries in the affirmative, and we issued the writ.
Dinkel seeks different relief from the relief requested by Rawls. Rawls sought a stay of the civil proceeding pending a resolution of the criminal proceeding; Dinkel seeks only a protective order preventing his deposition until the criminal charges against him are resolved. However, the same concerns apply to a party seeking a protective order. See Ex partePrice, 707 So.2d 1105, 1106 (Ala. 1997) (enumerating a similar balancing test to the one set forth in Baugh:
"To determine whether a stay or protective order should issue in such circumstances, the trial court must weigh the movant's interest in postponing the civil action against the prejudice that may result to the other party because of delay." (citingEx parte White, 551 So.2d 923 (Ala. 1989))). Therefore, we must balance Dinkel's interests in both the civil proceeding and the criminal proceeding against him against Patterson's interest in the civil proceeding. In this case, both concerns weigh in favor of Dinkel.
The trial court granted Patterson's motion to compel Dinkel's deposition and then denied Dinkel's motion for a protective order. Thus, the trial court has ordered Dinkel to sit for a deposition. This contravenes the principle that "[a] party cannot be compelled to testify or compelled to provide discovery in a civil proceeding while there is a parallel criminal action pending against the party." Exparte Ebbers, 871 So.2d 776, 787 (Ala. 2003) (citingBaugh and White). By granting the motion to compel Dinkel's deposition and denying his motion for a protective order, the trial court is compelling Dinkel to testify in a civil action while a criminal proceeding is pending against him, thus threatening his Fifth Amendment right not to incriminate himself.[1]
We have stated:
 "To sustain the moving party's Fifth Amendment right against self-incrimination, *Page 1134 
`"it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."'"
Rawls, 953 So.2d at 381 (quoting Baugh,530 So.2d at 241). In this case, compelling Dinkel to give his deposition would subject him to questions about the accident, from which his criminal charges stem. Such questions would be dangerous because the answers to those questions could result in a waiver of Dinkel's Fifth Amendment right;[2] his answers could negatively impact the criminal proceeding; and his silence could hurt him in the civil proceeding.
In addition to weighing the threat to Dinkel's Fifth Amendment right, we weigh his interest in the civil proceeding. As inPrice, requiring Dinkel to be deposed "would force upon him the choice of asserting his Fifth Amendment right [not to answer questions at the deposition] or participating fully in his defense in the civil case." 707 So.2d at 1106. As we stated in Baugh, "`[t]he Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another.'" 530 So.2d at 242 (quotingWehling v. Columbia Broad. Sys., 608 F.2d 1084, 1088
(5th Cir.1979)).
We must balance Dinkel's interest in not testifying by deposition in the civil proceeding and in the criminal proceeding against Patterson's interest in the civil proceeding. The fact that Dinkel seeks a protective order, rather than a stay of the civil proceeding, results in less potential prejudice to Patterson than was the case to the other party in Rawls. In Rawls, this Court held that "[although Teresa has a strong interest in the completion of the divorce proceedings, because there is no evidence that her case will be at all prejudiced or damaged by the issuance of a stay, Bryan's Fifth Amendment rights must prevail over her interest." 953 So.2d at 385-86. Whereas the stay granted inRawls prevented Teresa Rawls from obtaining any further discovery until after the resolution of the criminal charges against Bryan, a protective order here will only postpone Dinkel's deposition. It will not postpone the depositions of Gregg Jackson and Coralie Jackson, nor will it postpone any other discovery in the civil action.[3]
Because the threat to Dinkel's Fifth Amendment right and his interest in delaying his deposition in the civil proceeding outweigh Patterson's interest in taking his *Page 1135 
deposition before the criminal charges are resolved, the trial court exceeded its discretion when it denied Dinkel's motion for a protective order. Further, Dinkel does not have an adequate remedy on appeal because once he is compelled to give his deposition, his Fifth Amendment right is jeopardized. Once he has given the deposition, such an infringement cannot be corrected on appeal.
We issue the writ of mandamus and direct the trial court to enter a protective order allowing Dinkel to postpone his deposition in the civil action pending against him until the criminal charges against him arising out of the same accident are resolved.[4]
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] In Rawls, both the main opinion and the dissenting opinion discussed whether the trial court was compelling Rawls to testify, thus violating his Fifth Amendment right, by denying his motion to stay the civil proceeding. The dissent said that the decision did not implicate Rawls's Fifth Amendment right:
"Because he may refuse to answer, the fact that Bryan may be asked a question the response to which could incriminate him presents no Fifth Amendment issue." 953 So.2d at 391-92. However, this interpretation runs contrary to Ebbers, in which this Court stated:
 "A civil party's Fifth Amendment right against self-incrimination cannot be adequately protected by requiring him simply to assert his right to remain silent when asked specific questions during a civil deposition; such an approach construes the Fifth Amendment too narrowly.
"871 So.2d at 788.
[2] "The Fifth Amendment privilege cannot be selectively invoked, and once answers to incriminating questions have been given, the privilege is waived regarding questions on the same subject." Rawls, 953 So.2d at 388 (See, J., concurring in Parts I and II and concurring in the result as to Part III) (citing 5 Wayne R. LaFave et al., Criminal Procedure
§ 24.5 (2d ed.1999); John E. Nowak Ronald D. Rotunda,Constitutional Law § 7.6(a) (4th ed.1991)).
[3] This fact adequately addresses Patterson's argument that "[a] delay in the taking of depositions of non-party witnesses will impede the plaintiffs' ability to determine where defendant obtained alcohol and who allowed him to drive after consuming alcohol." Because Dinkel does not seek a protective order against the taking of the depositions of non-party witnesses, but seeks only a protective order to prevent his own deposition from being taken at this time, we do not address these concerns.
[4] Patterson concedes that Dinkel "may be entitled to a protective order as to his deposition testimony." She continues: "However, a complete stay of these proceedings is not necessary to protect the interests of [Dinkel] and would greatly prejudice [Patterson]." Patterson's brief at 8.
Both Patterson's brief and Dinkel's reply brief discuss whether Dinkel delayed in asking for a stay of the proceeding; however, this Court granted the stay pending resolution of this petition for the writ of mandamus and Dinkel does not seek a stay of the proceeding until resolution of his criminal charges. Instead, he seeks a protective order so that he will not be deposed until after resolution of the criminal charges.