Shana M. Flynn ("the mother") seeks a writ of mandamus directing the Autauga Circuit Court to vacate its existing order, entered in September 2007, denying her motion for a protective order to prevent the taking of her deposition. Among other things, the mother also requests in her petition that this Court order the trial court to refrain from requiring her to testify at any future hearing in the present case until the resolution of a criminal case that is pending against her. We grant the *Page 1248 
petition to the extent it seeks the vacation of the trial court's existing order.
In March 2006, the Autauga Circuit Court entered a judgment divorcing the mother and Michael Patrick Flynn ("the father"). Pursuant to the judgment, which was based on a settlement agreement between the parties, the Autauga Circuit Court awarded the parties joint legal custody of their two minor children. The trial court awarded the mother primary physical custody of the children, and it awarded the father visitation.
The case-action-summary sheet from the parties' divorce proceeding reflects that after the trial court entered the judgment of divorce a dispute arose concerning visitation and certain other matters. The father filed at least two motions requesting that the trial court hold the mother in contempt. At a hearing in May 2007, the parties apparently reached an agreement concerning some of their disputes, and the trial court entered an order directing the mother to acquire life insurance as required by the divorce judgment, directing her to return $370 that she had withdrawn from the father's bank account, and directing her to pay $750 of the father's attorney fees.
In June 2007, as a result of an undercover sting operation, the mother was arrested and charged with conspiracy to solicit the murder of the father.[1]
In early July 2007, the father filed a petition to modify custody; he sought sole legal custody and sole physical custody of the children. Also, the father requested that the trial court enter an emergency order awarding him pendente lite custody of the children. The father based his petition on the recent criminal charge against the mother and on her alleged "extreme" instability "with possible psychological issues rendering her completely unfit/unstable and unable to care for the . . . children." In his petition, the father also requested that the trial court enter an order holding the mother in contempt of court for failing to satisfy her financial obligations to him under the May 2007 order and for failing to provide him with documentation that she had procured life insurance.[2]
A few days after the father filed his petition for modification of custody, the trial court entered an order awarding the father sole pendente lite custody (both legal and physical) of the children.
The mother filed an answer denying most of the material allegations in the father's petition for modification but admitting that she had been charged with attempt to solicit the father's murder. The mother issued notices of deposition to *Page 1249 
the father and Agent Scott Donovan, the undercover agent with the Alabama Bureau of Investigation whom she allegedly solicited to murder the father.
The father filed a motion seeking a psychological evaluation of the mother to determine whether she posed any danger to the children. The mother objected to the psychological evaluation to the extent it might require her to discuss any matters regarding the pending criminal charge against her. Also, in late July 2007, the father filed a motion to quash the mother's deposition subpoenas. The father argued in part that it would "be inherently unfair and substantially prejudic[ial] . . . to require him to give a deposition . . . knowing that the [mother] has no intention of making herself available for the same, without restrictions or asserting [her] Fifth Amendment [p]rivilege [against self-incrimination]." The father requested that the trial court enter an order staying all depositions pending a hearing.
In August 2007, after conducting a pendente lite hearing, the trial court instructed the parties to schedule depositions, and it set another pendente lite hearing for September 13, 2007. A few days before the September 13 hearing, the father filed a motion alleging that the parties had been unable to arrange for depositions because of scheduling conflicts. The father requested that the trial court reschedule the September 13 hearing for a later date and that it order the parties to make themselves available for deposition on September 13. The trial court rescheduled the review hearing, but it apparently did not order the parties to make themselves available for deposition on September 13.[3]
On September 13, 2007, the mother issued a notice of deposition to the father; the father's deposition was to occur on September 18, 2007, immediately after Agent Donovan's deposition, which was also noticed for September 18, 2007. Subsequently, the father issued a notice of deposition to the mother; the mother's deposition was to occur on September 19, 2007.
Agent Donovan did not appear for his scheduled deposition, and, as a result, the parties' counsel held a conference call with the trial court on September 18, 2007. During the conference call, the trial court informed counsel for the parties that a motion to quash had been filed as to Agent Donovan's deposition subpoena and that it *Page 1250 
was granting the motion.[4] Following the conference call, the mother took the father's deposition.
On September 19, 2007, the mother filed a motion for a protective order. Relying on this Court's holding in Exparte Dinkel, 956 So.2d 1130 (Ala. 2006), the mother sought to prevent "the taking of her deposition until such time as the criminal charge against her [was] resolved." In Dinkel, this Court stated, in part:
 "This Court consider[s] three issues when deciding whether to issue the writ of mandamus and stay the [civil] proceeding [pending resolution of the criminal proceeding]: (1) whether the civil and criminal proceedings [are] parallel; (2) whether [the movant]'s Fifth Amendment protection against self-incrimination [is] threatened by his testifying in the [civil] proceeding; and (3) whether the requirements of the balancing test established in Ex parte Baugh, 530 So.2d 238, 244 (Ala. 1988), [are] met. . . .
 ". . . [T]he same concerns apply to a party seeking a protective order."
956 So.2d at 1133 (relying on Ex parte Rawls,953 So.2d 374 (Ala. 2006)).
After filing her motion for a protective order, the mother appeared for her deposition, but she refused to testify. The parties' counsel then participated in a conference call with the trial court concerning the mother's motion for a protective order. The transcript of the conference call reveals the following discussion:
 "THE COURT: I thought y'all had agreed yesterday that there was going — that you were going to take the parties' depositions.
 "[FATHER'S COUNSEL]: Well, not only that, Judge, but through my argument *Page 1251 
at our last two hearings and in conversations with [the mother's counsel], I have consistently refused to put [the father] up if I wasn't going to be able to at least put . . . [the mother] under oath and either get her to plead the Fifth or give me a deposition or partial deposition. And after putting my client up, then I get this motion for a protective order filed on the eve of our turn, for lack of a better phrase. But that having been said Judge, I want to address the issue and the case cited in the [mother's] motion. [In Dinkel,] there is a distinction, a clear distinction, that I want to make in my — since I haven't had a chance to file a written response to this motion, I'm reduced to making it verbally.
 "THE COURT: Well, I think I — I think I know what your argument is. And that is that [Dinkel] is a — . . . was apparently an automobile accident where there's a suit about the automobile accident and a criminal action concerning the automobile accident as well.
 "[FATHER'S COUNSEL]: Exactly.
 "THE COURT: Which made it a parallel proceeding.
 "[FATHER'S COUNSEL]: Right. And any testimony that that deponent would have given about that incident regarding wantonness or negligence could have implicated him or waived his Fifth Amendment privilege in any criminal proceeding for the same thing.
 "What I want to do is take at least a partial deposition of [the mother] on other issues, such as where she's resided, her income, other issues of fitness. And then once I get to anything remotely related to her pending criminal proceedings, if she asserts her Fifth Amendment privilege, I think she's well within her rights. And that is in the spirit of the case that's been cited.
 "THE COURT: Okay. [Counsel for the mother.]
 "[MOTHER'S COUNSEL]: Your Honor, the first thing I would note is as of yesterday, we had all agreed I would depose Agent Donovan as well yesterday; and that did not happen.[5] Secondly, the Dinkel
case makes clear that it is inappropriate to require a defendant in a parallel criminal proceeding to selectively invoke the Fifth Amendment.
 "THE COURT: This is not a — is this a parallel proceeding?
 "[MOTHER'S COUNSEL]: It is. It pertains exactly to the —
 "THE COURT: No. This proceeding pertains to the change of custody of children.
 "[MOTHER'S COUNSEL]: Right. Based on the allegation of criminal activity, which is the solicitation to commit murder.
 "THE COURT: Not — is it so — is that solely the grounds?
 "[FATHER'S COUNSEL]: No, sir.
 "[MOTHER'S COUNSEL]: Well, that is the —
 "THE COURT: All right. Here we go. Motion for protective order denied. Thank you, gentlemen."[6] *Page 1252 
After the conference call, the mother refused to testify at her deposition, and the father filed a motion to compel the mother to submit to deposition.[7] The mother filed a petition for writ of mandamus with the Court of Civil Appeals and an emergency motion to stay further proceedings in the trial court. The Court of Civil Appeals granted the motion to stay but subsequently denied the mother's petition without an opinion and lifted the stay. Ex parte Flynn (No. 207006, Oct. 16, 2007), ___ So.2d ___ (Ala.Civ.App. 2007)(table). The mother filed a petition for a writ of mandamus with this Court, as well as a motion requesting that we stay further proceedings in the trial court pending our resolution of her petition. We granted the motion to stay but left undisturbed the trial court's award of pendente lite custody to the father.
The mother asks this Court to direct the trial court to vacate its order denying her motion for a protective order. We grant the mother's petition in part.
The writ of mandamus is an extraordinary writ by which "a party seeks emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable." Rule 21(e)(4), Ala. R.App. P. Mandamus is appropriate
 "only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
Ex parte Perfection Siding, Inc., 882 So.2d 307,309-10 (Ala. 2003) (quoting Ex parte Integon Corp.,672 So.2d 497, 499 (Ala. 1995)). This Court may grant a writ of mandamus "to prevent an abuse of discretion, or to correct an arbitrary action outside of the exercise of a reasonable discretion." Foshee v. State, 210 Ala. 155, 157,97 So. 565, 566 (1923). A petition for a writ of mandamus is the appropriate means for challenging the denial of a motion to stay discovery or of a motion for a protective order under circumstances such *Page 1253 
as those in the present case. See Ex parte Weems,711 So.2d 1011 (Ala. 1998); see also Dinkel, supra.
As noted above, in Dinkel this Court stated that we
 "consider[] three issues when deciding whether to issue the writ of mandamus and stay the [civil] proceeding: (1) whether the civil and criminal proceedings [are] parallel; (2) whether [the movant]'s Fifth Amendment protection against self-incrimination [is] threatened by his testifying in the [civil] proceeding; and (3) whether the requirements of the balancing test[8] established in Ex parte Baugh, 530 So.2d 238, 244
(Ala. 1988), [are] met. . . ."
956 So.2d at 1133 (emphasis added).
The trial court's apparent conclusion that the present case did not involve a civil proceeding "parallel" to the pending criminal case against the mother is incorrect for two reasons. First, to the extent the concept of a "parallel" proceeding relates to the time of the proceeding, there is clearly a parallel proceeding in the present case because criminal charges against the mother were pending at all times pertinent to the present case. Second, as hereinafter discussed, to the extent the concept of a "parallel" proceeding relates to the nature of the claims and charges at issue, the present case includes sufficient "overlap" of issues and "implication" of the mother's Fifth Amendment rights to constitute a parallel proceeding.See, e.g., Ex parte Baugh, 530 So.2d 238, 239
(Ala. 1988)(civil claim alleging slander filed while there was a pending grand-jury investigation of, and eventualindictment for, the charge of theft of property);Rawls, 953 So.2d at 380 ("Because th[e] criminal proceeding [relating to a charge of stalking the former wife] and the divorce proceeding have some overlapping acts, they must be considered parallel proceedings. Therefore, Bryan [Rawls]'s motion for a stay cannot be denied on the grounds that these are not parallel proceedings." (emphasis added)).
The criminal proceeding at issue here involves a charge that the mother attempted to hire Agent Donovan to murder the father. The present case involves the father's attempt to prove that a material change of circumstances has occurred since the entry of the divorce judgment so that it is in the best interests of the parties' children for physical custody to be changed from the mother to him and for him to have sole legal custody. The pertinent alleged changes of circumstance described in the father's petition are (1) that the mother attempted to hire Agent Donovan to murder the father, (2) "[t]hat the [mother] is extremely unstable with possible psychological issues rendering her completely unfit/unstable and unable to care for the parties' minor children," and (3) "[t]hat the [mother] told the parties' minor children that the [father] `caused her to get arrested' and that all of this is his fault."
The father's petition to modify custody was filed soon after the mother was arrested and charged with attempting to solicit his murder. Two of the alleged changes of circumstances specifically relate to the mother's arrest, and the third alleged change generically states that the mother is unfit and unstable, with no indication that her unfitness and instability are unrelated to the mother's alleged criminal activity. The father alleged in his July 2007 motion to quash the mother's deposition subpoenas that he had "concerns about the *Page 1254 
[mother]'s mental state considering that fact that she allegedly tried to hire a hit man to kill him."[9] Thus, even the "unfitness and instability" allegations appear to relate to the mother's alleged crime.
Based on the foregoing, the mother's petition is due to be granted in part. The trial court is instructed to vacate its September 2007 order denying the mother's motion for a protective order and to proceed in a manner consistent with this opinion.
PETITION GRANTED IN PART; WRIT ISSUED.
COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
[1] The criminal matter was submitted to a grand jury in August 2007; the grand jury issued an indictment against the mother in November 2007.
[2] In his appellate brief, the father argues that the mother's alleged failure to comply with prior "orders" of the trial court constituted one of the grounds for his petition to modify custody. The only prior order discussed in the father's petition for modification of custody is the May 2007 order. The prayer for relief in the father's petition requests that the trial court hold the mother in contempt for failing to satisfy her obligations under the May 2007 order. The father does not appear to assert in his petition that the mother's alleged failure to comply with the May 2007 order was grounds for modification of custody, nor are there allegations concerning how her failure to comply with the order might relate to the care or welfare of the children. Even assuming that the mother failed to comply with the obligations imposed by the May 2007 order and that the father had properly raised the issue in support of his custody-modification request, it is unclear how the mother's conduct in that regard might constitute grounds for modifying custody.
[3] Based on copies of correspondence submitted by the father as an exhibit to his appellate brief, on September 12, 2007, counsel for the father wrote a letter to counsel for the mother suggesting several possible deposition dates in September 2007 and one in early October 2007. Counsel for the mother responded in a letter stating, in part:
 "Of the dates you propose, I have selected the dates of September 18 19, 2007, beginning at 2:15 p.m. on each date, in which to depose the [father] and Agent Donovan. It is my understanding that you will depose my client after the conclusion of these depositions on September 19. . . . I will need to hear from you promptly on this matter as I intend on issuing Donovan's deposition subpoena this morning. Deposition notices will follow shortly."
 In her reply brief, the mother does not deny the existence of the above-described correspondence or the accuracy of the content. However, there is nothing in the materials before us to reflect that the trial court was presented with the details of the parties' September 12 and September 13 correspondence or that that correspondence was made part of the record in the present case. Thus, we will not consider the content of the letters in determining whether the trial court exceeded its discretion in denying the mother's motion for a protective order, filed on September 19, 2007, and discussed infra. See Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002) (stating the well-settled rule that "the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion").
[4] Although the materials before us do not include either a copy of the motion to quash or a transcript of the September 18, 2007, conference call, the information in the text concerning the motion to quash and the granting of that motion is undisputed. Further, it is clear from the transcript of a September 19, 2007, conference call between the parties' counsel and the trial court, see discussion, infra, that the mother was not permitted to take Agent Donovan's deposition on September 18.
The father asserts in his brief to this Court that, during the September 18 conference call, after the trial court granted the motion to quash Agent Donovan's deposition subpoena:
 "Counsel for the [mother] . . . argued with the Court's ruling concerning [Agent] Donovan's deposition and suggested that his client may no longer be in a position to offer any testimony in the case if she were not permitted to take the deposition of [Agent] Donovan. Upon this development, Counselor for the [father] . . . again renewed and raised the issue already addressed with the Court that it would be inherently unfair and prejudicial to the [father] to be required to give deposition testimony if, in fact, the [mother] was changing her position and refusing to give any testimony at all by way of deposition. Furthermore, in presenting said argument, Counsel for the [father] explained to the Court that there were other necessary issues of discovery including the [mother]'s work history, medical/physical issues concerning the children, changes of residences and other relevant issues as to `fitness' not related in any way to the pending criminal charge; and, that this discovery was necessary for the development of the [father]'s case in chief to modify custody. At the conclusion of the legal argument, the Court recognized the need for discovery on these issues and ordered the parties to proceed with the deposition of the [father] On September 18th at 2:15 p.m. and to proceed with the deposition of the [mother] on September 19th at 2:15 p.m., specifically instructing counselors that if any questions to the [mother] were in any way related to the pending criminal charge, that counsel for the [mother] should `certify the question' on the record and have the questions presented to the Trial Court for ruling the following day."
(Emphasis omitted.) The foregoing factual statements are not supported by the materials before us, however, and we will therefore not consider them. See Ex parte Turner,840 So.2d at 135.
[5] In her motion for a protective order, the mother did not assert Agent Donovan's failure to appear for his deposition or the trial court's granting of the motion to quash Agent Donovan's deposition subpoena as a basis for her motion.
[6] The colloquy from the September 19, 2007, conference call reflects that the trial court understood that the parties had previously reached some agreement concerning the taking of their respective depositions. The colloquy, however, suggests that the trial court did not rely on the parties' agreement as the basis for denying the mother's motion for a protective order. Instead, the colloquy suggests that the trial court relied on its conclusion that the custody-modification case was not a civil proceeding that was "parallel" to the criminal proceeding pending against the mother.
The father urges this Court to conclude that the mother is "estopped" from refusing to submit to deposition because of the parties' "agreement" concerning the depositions and his alleged reliance on that agreement as the basis for his submitting to deposition on September 18. Any such estoppel, however, would have had to be based on findings of fact (1) regarding the terms of the parties' "agreement," the mother's conduct, and the father's "reliance," as to each of which the materials before us in varying degrees are unclear or omissive, seegenerally notes 3 and 4, supra, and (2) which the trial court did not explicitly make. Further, as noted, the colloquy does not suggest that the trial court's decision depended on an estoppel theory; rather, it suggests that the decision was based on the trial court's view as to whether the present case involved a "parallel" proceeding. Thus we decline to address here whether estoppel might be a proper ground to support the denial of the mother's motion. See, e.g., Hindsv. Hinds, 887 So.2d 267, 272 n. 2 (Ala.Civ.App. 2003).
[7] As part of the father's motion to compel he also requested that the trial court sanction the mother for failing to honor her agreement to "present[] herself for deposition . . . and give testimony as to issues not related to the pending criminal matter . . . while reserving the right to assert her Fifth Amendment privilege on any matters or questions related to the pending criminal matter." The trial court was unable to rule on the father's motion because of stays subsequently entered by this Court and by the Court of Civil Appeals before the denial of the mother's petition for the writ of mandamus on October 16, 2007, Ex parte Flynn (No. 207006, Oct. 16, 2007), ___ So.2d ___ (Ala.Civ.App. 2007)(table).
[8] The "balancing test" is the subject of extensive exposition by this Court in Ex parte Ebbers,871 So.2d 776, 787-88 (Ala. 2003).
[9] In his subsequent motion to compel, the father acknowledged that in the August 2007 pendente lite hearing "it was discussed [with the trial court] that if the [mother] asserted her Fifth Amendment Privilege at her deposition that the Court may infer that the allegations against her were true in the civil" proceeding, i.e., that the trial court might infer that she had in fact engaged in some criminal wrongdoing that would support the father's petition for modification of custody.